(March 18, 1986)

■ Christopher Pando, an Infant, by His Father and Natural Guardian, John Pando, Appellant, v Daysi Fernandez, Also Known as Daisy Fernandez, Respondent, et al., Defendant.—Order of the Supreme Court, New York County (Edward J. Greenfield, J.), entered December 4, 1984, which, *inter alia,* granted defendant's motion for summary judgment dismissing the complaint, and denied as moot plaintiff's cross

motion for an order pursuant to CPLR 3042 (d) directing defendant to serve a further bill of particulars and to submit to examinations before trial pursuant to previous court orders, unanimously reversed, on the law and the facts and in the exercise of discretion, without costs, to deny defendant's motion, reinstate the complaint and grant plaintiff's cross motion to the extent of directing that defendant comply with all previously ordered discovery within 30 days of the date of this order.

At issue is plaintiff-appellant Christopher Pando's right to share lottery winnings amounting to $2.9 million equally with defendant Daisy Fernandez. Plaintiff alleges that in June 1981, when he was 17 years old, he made an oral agreement with defendant in Spanish, the parties' native tongue. According to the agreement, defendant would give plaintiff $4 with which he would purchase New York State lottery tickets bearing numbers selected by him. During the purchase of the tickets and thereafter plaintiff, a devotee of Saint Eleggua, would pray to the Saint for help in the selection of a winning number. If the winning number was selected the parties allegedly agreed to divide the proceeds evenly. In fact, plaintiff did select a winning number. Upon informing defendant of this fact, defendant reportedly made numerous public declarations that plaintiff's prayer had brought about the happy result and that she and plaintiff would share the winnings as partners. Subsequently, defendant denied the existence of any agreement with plaintiff, represented that she was the sole owner of the winning lottery ticket in her possession, and sought to claim the entire prize for herself.

This action followed. Plaintiff ultimately seeks a declaration that the winning lottery ticket was jointly owned pursuant to the parties' agreement and that a constructive trust be impressed upon plaintiff's share of the lottery proceeds. Assuming the existence of a partnership agreement, plaintiff also seeks an accounting from defendant for half of all lottery winnings received by her. Defendant has asserted counterclaims for fraud and harassment.

Discovery in this action has proceeded with great difficulty. Although the parties, on September 9, 1981, stipulated before Justice Klein, *inter alia,* to the timely exchange of bills of particulars, plaintiff still had not received a complete set of answers to his demand in June 1982. At that time Justice Tyler denied defendant's motion to vacate plaintiff's demand for a bill of particulars. Despite Justice Tyler's order, plaintiff was forced to return to court in September 1982 to obtain an

order by Justice Ascione directing that the items demanded by plaintiff be furnished within 30 days.

Rather than comply with Justice Ascione's order defendant moved in October 1982 to dismiss the complaint pursuant to CPLR 3211 (a) (7); (c). Plaintiff cross-moved to obtain the discovery already directed, and for imposition of sanctions for defendant's failure to abide by the above-mentioned court orders. Special Term treated defendant's motion as one for summary judgment. In doing so, it found that proof of the alleged agreement was not barred by the Statute of Frauds and that Tax Law § 1610, prohibiting the sale of lottery tickets to minors, did not prevent plaintiff from asserting a claim to part of the prize. We agree with Special Term for the reasons stated in its opinion that neither of these grounds warranted dismissal of the complaint. We do not agree, however, that there was any greater cause to dismiss the action for impossibility of proof, as was done.

Citing a version of the alleged oral partnership agreement advanced by plaintiff in support of an earlier motion for a preliminary injunction, Special Term opined that to prove his performance of the agreement plaintiff would have to show that Saint Eleggua had in fact interceded at his request to bring about the desired result. The court reasoned that since divine intercession did not admit of forensic proof, plaintiff could not demonstrate that he had discharged his end of the bargain and, therefore, could not have the agreement enforced.

While it is true that saintly intervention is not provable in a court of law, it is far from evident that the alleged agreement requires such intervention as a condition of enforceability, much less makes it, as Special Term argued, "its essence, its very heart and soul."

In at least three places in the record not cited by Special Term (i.e., in plaintiff's affidavit in opposition to summary judgment, plaintiff's amended answers to interrogatories and in plaintiff's verified complaint), plaintiff describes the agreement in terms imposing no condition of saintly intervention for enforcement. According to these versions, plaintiff was obligated only to use his best efforts to enlist Saint Eleggua's help, in exchange for which defendant agreed to pay for the tickets and split the prize should it be won. If, as is possible, defendant bargained simply for the assistance of plaintiff whose help she believed would be efficacious, having received that assistance, she cannot now disown her obligations under

the agreement by imposing the additional condition that plaintiff prove the effect of his prayers. Plaintiff's prayers in this scenario had value to defendant because she believed in their power to help effectuate the desired end; the prayers having been made, the sought-after consequence, she believed, was at least more likely to follow. It is then entirely possible that defendant bargained simply for the benefit of those acts which, if performed by plaintiff, she felt would enhance her chances of winning the lottery. Under this version of the agreement plaintiff was required to do no more than purchase the tickets, select the numbers, and pray to the Saint in order to fulfill his end of the bargain. Certainly, none of these actions is impossible to prove in a court of law.

While there remained an account of the parties' alleged agreement supportable in the record and susceptible of proof it was error for Special Term to dismiss the complaint for impossibility of proof. In so doing, the court resolved the central factual issue of the case; it determined what the parties agreed to. It bears repetition that issue resolution is not the court's function on a motion for summary judgment. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957].) Once a material question of fact arises as it has here, summary judgment must be denied. (Supra.) Given the inconclusiveness of the record, no doubt largely attributable to the parties' apparent lack of sophistication in contractual matters, and the imprecision which easily intrudes when informal agreements reached orally in a foreign language are recounted, translated and documented for forensic purposes, we think the grant of summary judgment was unwarranted. The circumstances of this case render the factual questions raised over the agreement's terms difficult if not impossible to resolve in advance of trial.

Since the complaint is to be reinstated, plaintiff's cross motion for discovery-related relief is not moot. Having noted above defendant's unacceptable delay in meeting plaintiff's legitimate discovery requests we think it appropriate to require defendant to comply with previously ordered discovery within 30 days or face sanctions. Concur—Murphy, P. J., Sullivan, Ross and Rosenberger, JJ. [127 Misc 2d 224.]