[691 NYS2d 429]

CHUCK JONES, Respondent, v MARLA MAPLES, Appellant.

First Department, May 27, 1999

54

### APPEARANCES OF COUNSEL

*Chuck Jones,* respondent *pro se.*

*Jeffrey L. Goldman* and *Magda L. Cruz* of counsel (*Sherwin Belkin* on the brief; *Belkin Burden Wenig & Goldman, L. L. P.,* attorneys), for appellant.

### OPINION OF THE COURT

Saxe, J.

The order of the IAS Court authorizing plaintiff *pro se*, Chuck Jones, to conduct a videotaped deposition of defendant Marla Maples, albeit with the protection presumably provided by the presence of a Judicial Hearing Officer (JHO), must be reversed. In these truly unique circumstances, permitting Jones to proceed with a videotaped deposition of Maples is a frightening prospect, and constitutes an improvident exercise of discretion.

Chuck Jones alleges that in 1987 he was retained by Marla Maples as a combination personal manager, press agent, accountant, tax adviser and therapist, to assist her in developing her professional career. However, in June 1992, Jones was arrested for breaking into Maples's apartment and, among other things, stealing her shoes, underwear, photographs and private papers, as well as for illegal possession of a weapon. He was indicted on these charges on April 15, 1993. Later in 1993, while those criminal charges were pending, Jones commenced this breach of contract action, to recover fees and commissions due, in the amount of approximately $187,000, from income generated to defendant as a result of services he allegedly rendered under their agreement. Maples counterclaimed for damages based upon allegations of, *inter alia*, conversion and trespass arising out of the break-in.

In connection with the criminal prosecution under the 1993 indictment, a protective order was issued directing Jones to stay away from Maples's person, family, business, and home, and to refrain from any form of harassment of, or communication with, Maples and her family.

Although Jones's initial conviction in connection with the break-in was vacated on a habeas corpus application (*see, Jones*

*v Vacco*, 1996 US Dist LEXIS 13851 [SD NY, Sept. 19, 1996, Scheindlin, J.]), he was recently convicted again on retrial. Additional criminal charges were brought against Jones in the intervening years, based upon other conduct directed against Maples. In October 1995 Jones was again arrested, this time based upon claims that he had faxed to various individuals altered obscene photographs of Maples. Although these charges were dismissed on speedy trial grounds, on March 4, 1998, Jones was arrested yet again for faxing more allegedly obscene, pornographic or offensive material to Maples's friends, relatives and business associates on various dates in 1997 and 1998.

In addition, Jones has commenced a multitude of other civil lawsuits against Maples, her estranged husband Donald Trump, and various other entities, all somehow related to the break-in incident, the conduct of law enforcement officials in connection with it and the reporting by the media about it. While these legal actions, with the exception of the present action, have been dismissed, it is noteworthy that they were judged to represent "an attempt to use the courts to harass defendants through a continued course of vexatious litigation"; indeed, Jones's claims were found to be "fantastic and delusional" (*see*, *Jones v Trump*, 971 F Supp 783 [SD NY 1997]). Furthermore, in the context of these lawsuits Jones was repeatedly precluded from taking depositions of Maples and her husband (*see*, *Jones v Globe Intl.*, US Dist Ct, D Ct, Apr. 5, 1995, Covella, J., 94 Civ 1468; *Jones v Trump*, US Dist Ct, D Ct, Sept. 7, 1995, Dorsey, J., 95 Civ 1269).

It is important to note that all the charges against Jones involve bizarre incidents of harassment against Maples, which together create the impression that Jones derives gratification from obtaining, altering and disseminating intimate information concerning her. In fact, when the criminal charges are viewed in light of Jones's purposefully vexatious litigation as well as his boasts to the press of his intentions to further embarrass Maples (*see*, *e.g.*, Johnson, *Page Six*, New York Post, July 5, 1995, at 6; Shain & Scaduto, *Chuck to Marla: The Shoe's On the Other Foot Now*, New York Newsday, May 18, 1994, at A13), they do more than create an impression; they demonstrate that Jones's primary motivation in taking a videotaped deposition of Maples is to take advantage of a unique opportunity to further his harassment and embarrassment of Maples in all facets of her life.

Generally, "CPLR 3113 (b) and 22 NYCRR 202.12 and 202.15 freely permit a party taking a deposition to record it on

videotape. There is no requirement to show special need and videotaping may be employed over the objections of a bashful or reluctant witness" (*Liebman & Charme v Lanzoni*, 164 Misc 2d 302, 303, citing *Roche v Udell*, 155 Misc 2d 329). However, CPLR 3103 (a) gives the courts wide discretion to preclude or appropriately limit the use of any particular disclosure device where it determines that the use of that device would cause unreasonable annoyance or embarrassment. For instance, in *Troutman v Washburn* (197 AD2d 876), a plaintiff was properly excluded from the deposition of the defendant where it was demonstrated that the defendant was physically and psychologically intimidated by the plaintiff; the court instead gave the plaintiff audio access to the deposition and permitted the plaintiff to speak with his counsel. That particular solution cannot be applied here, however, since Jones is proceeding *pro se*.

Before precluding use of a sought discovery device, even where the potential for abuse of discovery is present, the court should consider whether that device is of particular value under the circumstances. Here, there is no need to videotape Maples's deposition, since there is no reason to believe Maples will be unavailable to testify at trial. Furthermore, the extent of necessary discovery is fairly narrow. This is a simple breach of contract action, for commissions allegedly due to Jones. Jones cannot plausibly maintain that he requires substantial discovery from Maples in order to make his case. As to Maples's remaining counterclaims, they seek money damages for tort claims stemming out of Jones's break-in at Maples's apartment. The necessary discovery is straightforward and limited.

Nor would the modification of the videotaped deposition procedure as directed by the IAS Court suffice to avoid the likely abuse. Given our liberal rules of discovery, even the presence of a JHO cannot protect Maples from being subject to harassment in the deposition. For instance, a JHO may sustain an objection to an inflammatory question, but cannot fully prevent the propounding of such questions, or the visual reaction Jones may seek to provoke.

We know of no other precaution that can provide sufficient protection. In view of the likelihood that Jones would use the process itself, rather than the result obtained, to gratify his own need to harass and embarrass Maples, he should not be permitted to be in physical proximity with her, nor to videotape either his questions or her responses.

The court has broad discretion to fashion an appropriate remedy. "When the disclosure process is used to harass or un-

duly burden a party, a protective order eliminating that abuse is necessary and proper" (*Barouh Eaton Allen Corp. v International Bus. Machs. Corp.*, 76 AD2d 873, 874; *see*, CPLR 3103 [a]). Here, all necessary discovery may be obtained by use of interrogatories limited to material and necessary questions.

We reject Jones's contention that Maples was not entitled to bring, nor this Court to hear, this appeal because Maples failed to take an appeal from a 1995 order denying a protective order as to an earlier notice to take her videotaped deposition. Neither a waiver nor an abandonment occurred. In any case, the occurrence of the subsequent incidents of harassment constituted a substantial change in the parties' circumstances, requiring new consideration of Maples's contentions.

Nor are we persuaded that the one-month lapse in the protective orders issued against Jones, during the period from approximately September 14, 1998 to October 13, 1998, requires a different result.

Finally, although we are cognizant of Jones's recent conviction with regard to the 1992 break-in, which conviction provides additional support for our conclusion, we would arrive at the same result even limiting ourselves to the circumstances as presented to the motion court. The evidence demonstrating that Jones was motivated by a desire to embarrass and harass Maples went well beyond mere accusations by Maples; a substantial number of documents support the conclusion, including reports of interviews with him.

Accordingly, the order of the Supreme Court, New York County (Louis York, J.), entered October 6, 1998, which granted plaintiff's motion to compel defendant to appear for a videotaped deposition to be personally conducted by plaintiff *pro se*, and denied defendant's cross motion for a protective order but directed that it be conducted before a Judicial Hearing Officer, should be reversed, on the law, the facts, and in the exercise of discretion, without costs, plaintiff's motion denied and defendant's cross motion granted.

Motion to file supplemental record denied.

ROSENBERGER, J. P., WILLIAMS and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered October 6, 1998, reversed, on the law, the facts, and in the exercise of discretion, without costs, plaintiff's motion to compel defendant to appear for a videotaped deposition to be personally conducted

by plaintiff *pro se* denied, and defendant's cross motion for a protective order granted. Motion to file supplemental record denied.