Order, Supreme Court, New York County (Karla Moskowitz, J.), entered May 16, 2002, granting defendant’s cross motion for summary judgment dismissing the complaint and denying plaintiffs motion for partial summary judgment or to dismiss *226 defendant’s affirmative defenses, modified, on the law, to deny defendant’s cross motion as to plaintiffs first cause of action, for breach of contract, except insofar as that cause seeks damages for the present value of future installment payments not yet due, and to reinstate that cause to that extent, and to grant plaintiffs motion insofar as to dismiss the second, third, fourth and fifth affirmative defenses, and otherwise affirmed, without costs.
Plaintiff is a former partner of defendant’s predecessor, Rogers & Wells'. At the time plaintiff left the firm, the Rogers & Wells Retirement Plan for Partners stated that partners aged 60-64 would be eligible for early retirement. The Rogers & Wells Partnership Agreement, which incorporated the Retirement Plan by reference, provided that the partnership’s executive committee could “enter into a written agreement” to pay not in excess of “Normal” or “Mandatory” retirement benefits to a partner who, “at the specific written request of the Executive Committee,” withdraws or retires other than in accordance with “Normal Retirement” (ages 65-69) or “Mandatory Retirement” (age 70). The retirement benefits available to a partner who takes normal or mandatory retirement included: four years of payments equal to 37.5% of the distribution of partnership profits the partner would have received had he not retired; participation in the firm’s medical and life insurance plans; use of office space and secretarial assistance; and supplemental retirement payments (SRPs), which are paid for life, beginning in the fifth year after the partner’s retirement. The Retirement Plan stated that SRPs “shall not be paid to a Partner who takes Early Retirement, except at the specific written request of the Executive Committee.”
Plaintiff contends that in January 1995, when he was 57 years old, he and the firm entered into the following oral agreement: in exchange for plaintiffs departure by the end of the year, he would be deemed to have taken early retirement at the executive committee’s specific written request, pursuant to the Retirement Plan and the Partnership Agreement, and he would be entitled to, inter alia, SRPs. Plaintiff duly departed the firm at the end of 1995, received the four years of 37.5% distribution payments, participated in the firm’s health and life insurance plans, and utilized firm office space and secretarial assets. In addition, Edward O’Sullivan, the firm’s Director of Finance/ CFO, testified at his deposition that James Asher, the managing partner, told him that the executive committee had approved SRPs for plaintiff, and it is undisputed that, in conjunction with outside actuaries, the firm’s controller, Vidya Rajpal, prepared *227 and sent to plaintiff a memorandum calculating the SRPs he would receive. Nevertheless, defendant refused to pay plaintiff SRPs when they became due on January 1, 2000.
Contrary to the assertions of defendant and the dissent, article X (b) of the Partnership Agreement, which states that if a partner takes early retirement the executive committee “may . . . enter into a written agreement with the . . . Partner authorizing payment” of benefits in addition to those set forth in article X (a), such as SRPs, does not bar plaintiffs claim as a matter of law. Article X (b) does not declare that the only way in which a partner may receive SRPs and other amounts beyond those provided in article X (a) is by written agreement; in fact, it is undisputed that plaintiff received certain profit distributions, which are also not mentioned in article X (a), without a written agreement. In addition, plaintiff submitted evidence that at least two partners who took early retirement receive SRPs, even though they do not have written agreements with defendant, a fact overlooked by the dissent.
Similarly, and contrary to the dissent’s interpretation, section 5.4 of the Retirement Plan does not prohibit the payment of SRPs in the absence of a written agreement. Section 5.4 states: “[SRPs] shall not be paid to a Partner who takes Early Retirement, except at the specific written request of the Executive Committee.” The phrase “specific written request” refers to “Early Retirement,” not the payment of SRPs, and thus the provision should be read as conveying the sentiment that SRPs shall not be paid to a partner who takes early retirement unless the early retirement was at the specific written request of the executive committee; the provision is silent as to whether a written agreement to pay SRPs is required. That conclusion is compelled by logic (the executive committee would not “request” a retiring partner to permit the firm to pay him SRPs) and by the use of the identical phrase in article X (b) of the Partnership Agreement with respect to early retirement but not the payment of SRPs. Section 2.5 (b) of the Retirement Plan, cited by the dissent, merely references section 5, and thus adds nothing. Section 6.1 of the Retirement Plan does state that Senior Counsel “shall enter into a written agreement with the Firm containing provisions approved by the Executive Committee, including [a noncompete clause]” in “exchange for receiving [SRPs] and all other benefits under this Plan.” However, the Retirement Plan does not mandate any particular time requirement and, as already noted, Rogers & Wells paid “all other benefits” to plaintiff without a written noncompete agreement.
To the extent the Partnership Agreement and Retirement *228 Plan appear to prohibit the payment of SRPs to a partner taking early retirement unless that early retirement was at the specific written request of the executive committee, neither the Partnership Agreement nor the Retirement Plan prohibits oral modifications, and article XXII of the Partnership Agreement specifically permits oral modifications. For that same reason, General Obligations Law § 15-301 does not bar plaintiffs claim.
Insofar as the dissent argues that plaintiff was not even a “Senior Counsel,” because he was not yet 60 years old (the commencement age of “Early Retirement” as set forth in the Retirement Plan) at the time he withdrew from the firm, it is undisputed that Rogers & Wells executed a “Change of Status Form” listing plaintiff as “Senior Counsel,” a term the dissent acknowledges is defined as a partner who “has retired in accordance with the provisions of [the Plan].” That plaintiff was designated a Senior Counsel, even though he had not yet attained the age of 60, also refutes the dissent’s proposition that the Retirement Plan and Partnership Agreement could not be orally modified.
We also disagree with defendant’s argument that the agreement alleged by plaintiff was an unenforceable agreement to agree. To be sufficiently definite, an agreement need not contain a dollar amount; if it contains a method for calculating the amount, that suffices (see e.g. Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 483 [1989], cert denied 498 US 816 [1990]; Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 110 [1981]). The Retirement Plan specifies in detail how to calculate SRPs.
Defendant argues, and the dissent agrees, that the statute of frauds bars the alleged oral agreement, since SRPs are paid for life, beginning in the fifth year of retirement, and thus are not capable of complete performance within one year. However, the statute of frauds is not a bar if “the acts to be performed beyond a year [in the instant case, payment of SRPs] concern only enforcement of . . . existing . . . rights under . . . written agreements [in the instant case, the Rogers & Wells Retirement Plan for Partners]” (Kane v Rodgers, 21 AD2d 773 [1964], affd 15 NY2d 544 [1964]). Here, the alleged oral agreement was to change plaintiff’s status from partner to early retirement (at the specific written request of the executive committee) with entitlement to SRPs. That agreement was fully performable within one year. The payment of SRPs was governed by the written Retirement Plan, which contains detailed instructions on how to calculate SRPs. Because plaintiff’s rights to SRPs under the Retirement Plan became fixed once he was deemed to *229 have taken early retirement at the specific written request of the executive committee (if this was, indeed, the parties’ oral agreement), and because computation of the actual amount of plaintiffs SRPs would be “a mere ministerial act,” the fact that the payments wpuld extend into the future does not cause the statute of frauds to bar plaintiffs claim (see Pando v Fernandez, 127 Misc 2d 224, 227 [1984], revd on other grounds 118 AD2d 474 [1986]; see also Cron v Hargro Fabrics, 91 NY2d 362, 369-370 [1998]).
As the Court of Appeals has acknowledged, there may be certain circumstances which “represent a slight modification of language in previous case law concerning the necessity of full performance by all parties within a year to satisfy the Statute of Frauds” but nevertheless “warrant a slightly different analysis that remains consistent with . . . the overriding purpose of the Statute of Frauds,” namely “the prevention of fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury but not to afford persons a means of evading just obligations” (Cron, 91 NY2d at 370 [citations and internal quotation marks omitted]). Where, as here, “the measure of defendant’s obligation to compensate its employee is fixed within a year, the dangers envisioned by the Statute of Frauds do not come into play” (id.). Indeed, the absence of fraud on the part of plaintiff is indicated by the fact that the firm’s CFO confirmed the existence of the promise to pay plaintiff SRPs, the firm’s controller calculated the SRPs due to plaintiff, and the partnership had a history of paying SRPs to partners who took early retirement without a written agreement.
While the dissent is correct in noting that not all Senior Counsel are entitled to SRPs, the alleged oral agreement, as noted supra, was for plaintiff to become Senior Counsel (having been deemed to retire at the specific written request of the executive committee) with a right to SRPs.
Although the 1995 letter signed by Rajpal, the firm’s controller, which calculated the SRPs plaintiff was expected to receive, is some evidence of the existence of the oral agreement alleged by plaintiff, it does not constitute a memorandum signed by defendant’s agent such as to satisfy the writing requirement of the statute of frauds, since Rajpal did not have the authority to offer plaintiff SRPs. The other writings cited by plaintiff are also deficient; the Rogers & Wells “Change of Status Form” listing plaintiff as a “Senior Counsel” is not dispositive, since, under the Retirement Plan, not all Senior Counsel are entitled to SRPs, and the Benefit Plans Guide for Partners, which was *230 sent to plaintiff after he withdrew from the firm, states that it “is not complete,” it “does not constitute an official summary of any . . . plans,” and in the event of a conflict between the benefit guide and “the provisions of the legal plan documents,” the latter would prevail.*
We emphasize that our rejection of defendant’s “agreement to agree” argument and statute of frauds defense is not conclusive of the ultimate merits; issues of fact exist as to the terms of the parties’ agreement and the amount, if any, of the SRPs to which plaintiff is entitled. However, plaintiff can only recover the SRPs that have already fallen due; he is not entitled to the present value of future installments of SRPs (see e.g. Acacia Natl. Life Ins. Co. v Kay Jewelers, 203 AD2d 40, 43-44 [1994]; Romar v Alli, 120 AD2d 420, 421 [1986]).
Plaintiff’s unjust enrichment claim was properly dismissed because no benefit “was unjustly conferred upon defendant! ] at plaintiff’s expense” (J.E. Capital v Karp Family Assoc., 285 AD2d 361, 362 [2001]). There is no common-law right to a pension (see Schlansky v United Merchants & Mfrs., Inc., 443 F Supp 1054, 1059 [1977]). Plaintiff was compensated for his work for the firm by receiving profit distributions while he was a partner. In addition, for the first four years after he left the firm, he received 37.5% of the distributions he would have received if he had remained a partner. Defendant’s refusal to pay SRPs is not so shocking that equity and good conscience require defendant to pay them, especially in light of evidence that plaintiff was asked to leave the firm because of a serious billing problem.
Plaintiff’s claim for breach of fiduciary duty was properly dismissed because he failed to allege an independent tort (see William Kaufman Org. v Graham & James, 269 AD2d 171, 173 [2000]; cf. Mandelblatt v Devon Stores, 132 AD2d 162, 167-168 [1987]). Although plaintiff argues that defendant acted in bad faith, a failure to pay money in accordance with an alleged promise is a breach of contract, not a tort. Concur—Buckley, PJ., Mazzarelli and Andrias, JJ.
Sullivan, J.,

 Plaintiff has not raised the doctrine of part performance, an exception to the statute of frauds, which in any event would be inapplicable, since the acts of part performance must have been those of the party insisting on the contract and unequivocally referable to the agreement, but plaintiffs early retirement and acceptance of certain retirement payments and benefits did not automatically entitle him to SRPs (see Messner Vetere Berger McNamee Schmetterer Euro RSCG v Aegis Group, 93 NY2d 229 [1999]).