OPINION OF THE COURT
Anthony J. Falanga, J.
This is a motion by the husband for an order pursuant to CPLR 3403 (a) and Domestic Relations Law § 249 granting a trial preference. The wife moves for a protective order enjoining the husband from disseminating any transcriptions of her examination before trial and for a further protective order “limiting the scope of the plaintiffs discovery.”
The parties were married on June 20, 1987. At the time of the marriage, the husband was 61 and the wife was 58 years old. Both parties had been widowed prior to their marriage to each other. The husband is presently 77 and the wife is 74 years old. The husband has five adult children from a prior marriage. The wife has three adult children from a prior marriage. The husband has submitted a physician’s affidavit stating that he is suffering from adenocarcinoma, a form of metastatic lung cancer that has spread to his vertebral column. The affidavit further states that the husband’s condition will deteriorate and that the chances of remission are extraordinarily low.
In June 1987, prior to their marriage, the parties executed and acknowledged a written agreement waiving their respective rights of election in the other’s estate. Said agreement also provides, to wit: “In the event of a divorce, separation of the parties or annulment of the marriage no claims shall be made by either party against the other’s title and interest in his or her separate and sole property. Sole and separate property shall include any real or personal property individually owned by either party whether the same be acquired prior to or subsequent to the execution of this agreement and marriage of the parties. Marital property shall include only such real or personal property held jointly or by the entirety.”
During the marriage, the parties lived modestly in a rental apartment. The husband had income of approximately $2,100 to $2,400 a month from Social Security and a pension. The wife *486 received $400 a month Social Security and a pension, in an undisclosed monthly amount. The parties maintained a joint checking account. The wife received a personal injury settlement of $18,000 and did not deposit said funds into the joint account.
The parties vacationed in Las Vegas and Atlantic City on various occasions. They both gambled during such trips. The wife regularly played the New York State lottery using the same sets of numbers comprised of family birth dates and ages.
On February 12, 2003, a lottery ticket purchased by the wife was the only winning ticket of a $25,000,000 lottery prize. On March 6, 2003, the parties and one of the wife’s children took a limousine to Madison Square Garden to collect a check for $8,590,077. The check was made payable to the wife. There were additional taxes due on said winnings of $1,300,000. On March 7, 2003, the parties met with an accountant. On March 8, 2003, they met with an agent from Merrill Lynch. On March 19, 2003, the parties signed a contract to purchase a condominium in Melville for $490,000. On April 8, 2003, the wife placed the lottery winnings into the Concelia Parker Living Trust. As of April 25, 2003, said trust had $8,000,950.69 on deposit in a Merrill Lynch account. The trust document provides that upon the wife’s death, the husband receives any residence in which he resides at the time of her death. In addition, he receives the income from $500,000 segregated into a marital trust. The balance of the trust passes to the wife’s children. Both parties attended the closing of the Melville condominium on April 25, 2003. Title to the condominium was placed in the name of the Concelia Parker Living Trust. The husband commenced the instant action for divorce or separation on May 22, 2003. Prior to the commencement of the action the wife made certain gifts of the lottery winnings to her children. No details have been provided with regard to said gifts. The husband does not have access to the Melville condominium.
The husband contends that during the marriage he paid all the household bills; that he never asked the wife for “a dime”; that she was free to spend her retirement funds as she saw fit; that he never received any portion of the wife’s personal injury settlement despite the fact that he spent $3,300 to fund the litigation; that he paid $15,000 for the wife’s daughter’s wedding; that he lent her son $8,000 and her daughter $3,300; that he and the wife always shared gambling winnings on their trips to Las Vegas and Atlantic City; that he and the wife “always purchased lottery tickets in the past with the use of joint funds”; *487 that he gave the wife the $20 she used to purchase the winning ticket; that lottery officials told him it “didn’t matter” if one or both parties’ names were on the check; that he used $1,500 of funds from the parties’ joint account as a deposit on the Melville condominium; and that he was “led to believe” he would have joint access by means of a checkbook and credit card to the trust funds on deposit in Merrill Lynch.
The wife contends that she contributed her late husband’s pension check toward household expenses and supported herself and paid all her own bills with her late husband’s Social Security; that the husband herein never gave her “even a quarter” for gambling in Las Vegas and Atlantic City; that he never shared gambling winnings with her; that her lottery tickets were always purchased with her separate property, to wit: her personal injury proceeds or Social Security; that the husband encouraged her to make gifts of the lottery winnings to her children; and that other than said gifts, she has not made any disbursements of the lottery winnings except in the ordinary course of living.
The husband’s summons with notice does not set forth a cause of action to set aside the prenuptial agreement dated June 1987, nor has he asserted allegations that said agreement is the unconscionable product of overreaching, fraud, duress or mutual mistake. Said agreement clearly states that the only property subject to equitable distribution is property held in joint name. The lottery proceeds in issue are not held in joint name. Accordingly, pursuant to the terms of the June 1987 agreement, the winnings are, prima facie, the wife’s separate property, not subject to equitable distribution.
The husband’s summons with notice does, however, seek a determination that the lottery winnings are the joint property of the parties. The court has the authority, in an action for divorce and/or separation, to decide questions of title pursuant to Domestic Relations Law § 234.
Pursuant to an order dated September 3, 2003, the husband’s application for an order enjoining the wife from making any disposition of the lottery proceeds during the course of the above-captioned action was granted to the extent that the wife, individually and as trustee of the defendant trust, her agents, attorneys and assigns were restrained from making any disposition of $3,000,000 of the lottery winnings that were on deposit in the Merrill Lynch account as of April 25, 2003.
The law is well settled that a lottery prize won during a marriage is generally considered property acquired during the mar *488 riage subject to equitable distribution pursuant to Domestic Relations Law § 236 (B) (see, Campbell v Campbell, 213 AD2d 1027 [1995]; Smith v Smith, 162 AD2d 346 [1990], lv denied 77 NY2d 805 [1991]; Ullah v Ullah, 161 AD2d 699 [1992], lv denied 76 NY2d 704 [1990]). The specific language of the parties’ prenuptial “opting-out” agreement, which clearly defines marital assets as those held in joint name, renders the general rule inapplicable in this case. The lottery proceeds herein are not subject to equitable distribution unless the husband first successfully prosecutes his claim that he and the wife should be declared joint title owners of the lottery winnings.
An oral agreement to share lottery winnings is valid and enforceable (see, Johnson v Spence, 286 AD2d 481 [2001]; Maffea v Ippolito, 247 AD2d 366 [1998]; Edwin v Arackal, 241 AD2d 335 [1997]; Kelkenberg v Anderson, 237 AD2d 972 [1997]; Johnson v Johnson, 191 AD2d 257 [1993]; Smith v Smith, supra; Pando v Fernandez, 118 AD2d 474 [1986]). The husband has the burden of proving at the trial that the parties made a certain and specific mutual promise to share the subject lottery winnings; that the purchase of the winning ticket by the wife was in furtherance of the parties’ “joint venture”; and that the wife breached the parties’ agreement by refusing to share the winnings with him (see, Johnson v Spence, supra; Maffea v Ippolito, supra; Edwin v Arackal, supra; Kelkenberg v Anderson, supra; Smith v Smith, supra; Pando v Fernandez, supra).
A preliminary conference was conducted on July 28, 2003. Pursuant to the preliminary conference order, granted on the consent of the parties, discovery demands and interrogatories were to be served by September 1, 2003; responses were to be served by October 1, 2003; and depositions were to be conducted by October 14, 2003. On or about August 25, 2003, the husband served a document demand pursuant to CPLR 3120 and interrogatories. The wife did not serve an objection to said discovery demands. She served responses to said demands on or about October 31, 2003. On or about September 2, 2003, the husband served a notice to take the wife’s deposition on October 14, 2003. Said notice included a rider demanding that certain financial records for the period January 1, 1998 to “date” be produced at the deposition. Thereafter, counsel agreed to conduct depositions of both parties on December 5, 2003. On or about October 13, 2003, the husband’s counsel notified the wife’s counsel that the husband’s deposition would be videotaped pursuant to CPLR 3113. It is unclear on this record whether counsel intended to also videotape the wife’s deposition.
*489 The wife’s notice of motion herein states that she seeks an order enjoining the husband from disseminating the transcript of her deposition. Her attorney’s affirmation in support of her motion seeks an order enjoining the husband from disseminating “transcripts of pretrial depositions, including stenographic, video and audio taped transcripts to any third party not directly connected with the instant matrimonial proceeding.” Counsel’s affirmation also specifically seeks a protective order precluding the dissemination of the transcript of the husband’s deposition.
In support of the portion of her motion seeking to enjoin the dissemination of the deposition transcripts, the wife suggests only that an injunction is appropriate to prevent the husband from making “tactical” use of the transcripts by turning them over to the media that has previously reported on the litigation. She does not allege any further concern or basis for the injunction. The wife concedes that generally the party seeking a protective order bears the burden of demonstrating entitlement to such order, but, citing Lisa C.-R. v William R. (166 Misc 2d 817 [1995]), she contends that in a matrimonial action, the party seeking to disseminate a deposition transcript bears the burden of establishing a special need for the dissemination. The wife contends that the husband has not met this burden and that therefore her motion for an injunction should be granted.
The wife’s attorney’s affirmation also seeks an order “limiting the scope of discovery, including the examinations before trial, to the plaintiffs discovery of evidence pertaining to the parties’ alleged oral agreement to share lottery proceeds.” Counsel contends that the husband should be precluded from discovering information regarding the wife’s premarital assets, her current financial status, her financial circumstances prior to the execution of the parties’ antenuptial agreement, the circumstances surrounding the execution of the agreement and the wife’s finances during the marriage except as they relate to gambling winnings.
Although the record indicates that the wife served responses to the husband’s interrogatories and document demand on October 31, 2003, no copy of said responses has been provided and the court is unable to determine on this record whether the wife is seeking a protective order with regard to particular items in said demands or whether she is seeking only to limit the scope of her deposition.
The husband contends that the wife’s application for a protective order is untimely pursuant to CPLR 3122 (a). He has not *490 asserted any special circumstances that warrant the dissemination of the deposition transcripts to nonparties, but rather contends that as the action will not be tried before a jury the wife will not suffer any harm as a result of the dissemination of the transcripts to the media. He further contends that the wife has waived the right to seek a protective order as she has heretofore participated in extensive media coverage relating to this action.
With regard to the scope of the depositions, the husband contends that in order to prove that the purchase of the subject lottery ticket was a joint venture, he must be permitted discovery with regard to the wife’s premarital assets and income as well as the parties’ finances during the marriage. He also points out that he is entitled to discovery with regard to an accounting of any disbursements of the lottery proceeds.
Based upon all of the foregoing, the motions are decided as follows:
The husband’s contention that the wife’s motion for a protective order is time-barred is devoid of merit. CPLR 3122 requires the filing of a written objection to a notice or subpoena to produce documents served pursuant to CPLR 3120 and 3121 within 20 days of the service of the notice or subpoena. CPLR 3122 is not applicable to a notice demanding attendance at a pretrial deposition served pursuant to CPLR 3106 (a) and/or a notice to produce documents at the deposition served pursuant to CPLR 3111. CPLR 3103 permits a party to seek a protective order against unreasonable annoyance, expense, embarrassment, disadvantage or other prejudice at “any time” during the course of a proceeding (CPLR 3103 [a]). Accordingly, the wife’s motion is not time-barred.
The law is well settled that pretrial depositions are not a public component of a civil trial and are not considered a “sitting of the court” which must be open to the public pursuant to section 4 of the Judiciary Law (see, Seattle Times Co. v Rhinehart, 467 US 20 [1984]; Scollo v Good Samaritan Hosp., 175 AD2d 278 [1991]; Matter of Westchester Rockland Newspapers v Marbach, 66 AD2d 335 [1979]; Lisa C.-R. v William R., supra; Bal v Hughes, 1995 WL 244757, 1995 US Dist LEXIS 5466 [SD NY, Apr. 26, 1995]). Further, a party has no First Amendment right to disseminate information gleaned through pretrial discovery proceedings (see, Seattle Times Co. v Rhinehart, supra; Bal v Hughes, supra). Accordingly, a court may enjoin the dissemination of the transcript and/or audio and videotape of a pretrial *491 deposition pursuant to its broad authority to fashion appropriate measures pursuant to CPLR 3103 (b) to prevent abuses of the discovery process (see, Jones v Maples, 257 AD2d 53 [1999]).
Generally, the burden of proving the need for a protective order is on the moving party (see, Vivitorian v First Cent. Ins. Co., 203 AD2d 452 [1994]). The court in Lisa C.-R. v William R. (supra) commented upon the inherent private nature of matrimonial proceedings, noted that Domestic Relations Law § 235 (1) prohibits an officer or clerk of the court from permitting anyone other than a party or a party’s counsel from copying, examining or perusing papers filed in a matrimonial action, and reasoned that there is a presumption against dissemination of pretrial deposition transcripts and/or audio and videotapes in matrimonial actions. Based on said presumption, the court shifted the burden of proof to the party defending a motion for a protective order to demonstrate special circumstances warranting dissemination of such transcripts and/or tapes.
This court declines to follow Lisa C.-R. v William R. (supra). While the court in Lisa C.-R. v William R. (supra) found that there is a presumption against dissemination of matrimonial papers, it did not define the parameters or duration of such presumption. Does such presumption continue after the disposition of the matrimonial litigation? Does it apply to any dissemination or only to dissemination to the media? For example, years after the conclusion of a litigation is there a presumption that a former spouse may not show a videotape of his own deposition to his physician, therapist or current spouse? This court notes that 22 NYCRR 202.15 specifically permits litigants to purchase additional copies of audio and videotapes of depositions and does not restrict their use by a party to an action.
Further, the court in Lisa C.-R. v William R. (supra) indicated that the presumption against dissemination of matrimonial papers was in the best interest of children in cases involving disputed custody. The applicable law in the Appellate Division, Second Department, does not generally permit discovery with regard to grounds for divorce or custody and neither is at issue herein (see, Corsel v Corsel, 133 AD2d 604 [1987]; Ginsberg v Ginsberg, 104 AD2d 482 [1984]). In fact, the financial information revealed in a matrimonial deposition is not unlike that discoverable in any tort action involving personal injury and claims for economic loss including loss of consortium which may involve details of litigants’ sexual relations.
The wife has not reported any precedent in accord with Lisa C.-R. v William R. (supra). Neither the Domestic Relations Law *492 nor the CPLR provide any statutory mandate compelling matrimonial litigants to seek leave of court before disseminating their own or their spouse’s papers in a matrimonial action. Domestic Relations Law § 235 (1) prohibits a court employee from disseminating papers filed in a matrimonial action but does not place any such prohibition on litigants. This court finds said statute does not reflect a legislative intent to presumptively restrict the parties’ use of their own or their spouse’s filed papers or information obtained during discovery proceedings and that such a presumption should not be judicially created. Accordingly, in the absence of such a presumption, the burden of proof herein is on the wife.
As the wife has not alleged that the dissemination of a transcript and/or audio or videotape of her own or the husband’s pretrial deposition would unreasonably harass, embarrass or otherwise prejudice her, her motion for a protective order enjoining the husband from disseminating same is denied. The court, however, stays the husband from disseminating the transcripts, audio and/or videotapes of his and the wife’s pretrial depositions for a period of 14 days after the receipt of the written transcripts of same and grants the wife leave to renew the application for a protective order, within said period, upon a showing that she is entitled to an order enjoining the dissemination of all or portions of same pursuant to CPLR 3013.
The portion of the wife’s motion seeking to limit discovery except as it relates to the issue of gambling winnings is granted only to the extent that her deposition shall not entail inquiries relating to the circumstances surrounding the execution of the antenuptial agreement, as the validity of said agreement is not in issue, nor her present financial circumstances, as maintenance is not in issue. The parties’ financial circumstances immediately prior to and during the marriage are clearly relevant to the husband’s “joint venture” claims with regard to the lottery proceeds, as well as to any claims by either party for equitable distribution of any jointly owned assets such as their checking account. The court notes that if the husband is successful in proving his “joint venture” claims, the lottery proceeds would likely be declared the parties’ joint asset, subject to equitable distribution, and that based on the fortuitous manner in which said asset was acquired, such asset would likely be equally divided. As the husband has a viable claim to half the lottery proceeds, he is entitled, at the wife’s deposition, to make inquiry with regard to taxes, expenses of investment, and interest *493 earned on said proceeds, as well as any disbursements exceeding 50% of the net proceeds. He may not, however, inquire with regard to disbursements by the wife up to 50% of the net proceeds for which he has no viable claim.
To the extent that the wife may have been seeking a protective order limiting the scope of discovery devices other than her deposition, the record does not support such request and such relief is denied.