■  URI TORNHEIM, Appellant, v BLUE & WHITE FOOD PRODUCTS CORP., Respondent. [901 NYS2d 307]—

In an action, inter alia, for a judgment declaring that the plaintiff is the beneficial owner of 20% of the shares of the stock in the defendant, Blue & White Food Products Corp., and to recover damages for breach of contract, the plaintiff appeals, as limited by his brief, from so much of an order of the Supreme Court, Rockland County (Nelson, J.), entered November 12, 2008, as denied those branches of his motion which were for summary judgment on the first, second, and fifth causes of action and on the issue of liability on the fourth and sixth causes of action, pursuant to CPLR 3211 (b) to dismiss the third, fourth, fifth, sixth, seventh, and tenth affirmative defenses, and pursuant to CPLR 3103 (c) and 3126 (3) to strike the answer.

Ordered that the order is affirmed insofar as appealed from, with costs.

In 2000 the plaintiff, Uri Tornheim, approached the defendant, Blue & White Food Products Corp. (hereinafter Blue & White), about opportunities for entering the business of baking and distributing bourekas, which are puffed pastries filled with cheese, spinach, potatoes, or other vegetables. Tornheim and Zohar Norman, who was then the president of Blue & White, signed a memorandum of understanding (hereinafter the MOU), which was written in Hebrew. According to a translation of the MOU submitted by Tornheim, it states that Tornheim agreed to work for Blue & White for six months, at the end of which he was to be given the option of buying 20% of the stock in the company. According to Norman, the MOU states that, at the end of the six months, the parties would discuss the possibility

of Tornheim joining the company in some capacity. Although Tornheim testified at his deposition that he worked for Blue & White for six months, and was paid the sum of $800 per week, he was unable to submit any paychecks into evidence. Blue & White submitted evidence that Tornheim "was never in the factory," and that he did not fulfill his obligations according to his own translation of the MOU.

Norman shut down the boureka-making business in June 2001. Sulamis Schonfeld, Tornheim's wife and assignee, commenced the instant action against Blue & White on April 1, 2004, alleging breach of contract and seeking a judgment declaring that she owned 20% of Blue & White. Tornheim was substituted for her as the plaintiff in this action on July 30, 2007. Tornheim moved for summary judgment on the first, second, and fifth causes of action and on the issue of liability on the fourth and sixth causes of action, and, as relevant to this appeal, pursuant to CPLR 3211 (b) to dismiss Blue & White's third, fourth, fifth, sixth, seventh, and tenth affirmative defenses. He also moved to strike Blue & White's answer on the ground, inter alia, that Blue & White improperly accessed his matrimonial litigation file. In an order entered November 12, 2008, the Supreme Court denied Tornheim's motion. Tornheim appeals, and we affirm the order insofar as appealed from.

The Supreme Court properly denied that branch of Tornheim's motion which was to strike the answer on the ground that Blue & White improperly accessed his matrimonial litigation file. "Domestic Relations Law § 235 (1) prohibits a court employee from disseminating papers filed in a matrimonial action but does not place any such prohibition on litigants" (*Parker v Parker*, 2 Misc 3d 484, 492 [2003]). Tornheim does not dispute that his ex-wife consented to the disclosure of his deposition testimony from their divorce action.

The Supreme Court also properly denied those branches of Tornheim's motion which were for summary judgment on the first, second, and fifth causes of action and on the issue of liability on the fourth and sixth causes of action. Although Tornheim established his prima facie entitlement to judgment as a matter of law by submitting the MOU and his translation of it, demonstrating that he had an option to buy 20% of Blue & White's stock, Blue & White raised triable issues of fact in opposition by submitting a conflicting translation, under which Tornheim had no option to buy, and by submitting evidence that Tornheim failed to comply with the terms of the MOU— even according to his own translation (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Lastly, the Supreme Court properly denied those branches of Tornheim's motion which were to dismiss the third, fourth, fifth, sixth, seventh, and tenth affirmative defenses. Tornheim failed to meet his burden of demonstrating that the defenses cannot be maintained (*see* CPLR 3211 [b]; *Matter of Harrison v State of New York*, 262 AD2d 833 [1999]; *Connelly v Warner*, 248 AD2d 941 [1998]; *Winter v Leigh-Mannell*, 51 AD2d 1012 [1976]).

Tornheim's remaining contentions are raised for the first time on appeal and, accordingly, are not properly before this Court (*see generally Schehr v McEvoy*, 43 AD3d 899, 900 [2007]). Mastro, J.P., Eng, Belen and Austin, JJ., concur.