■ SANDRA L. SMITH, Appellant-Respondent, v JOSEPH SMITH, Respondent-Appellant.—Judgment, Supreme Court, Westchester County (Lucille Polk Buell, J.), entered January 6, 1989, which, *inter alia,* granted equitable distribution of State lottery winnings by allocating 85% to the defendant husband and 15% to plaintiff wife, unanimously reversed, to the extent appealed from, on the law, the facts and in the exercise of discretion, to distribute the lottery winnings equally, without costs.

The parties were married on October 24, 1982 and had no children although plaintiff's son from a previous marriage resided with them. While plaintiff played the State lottery (Lotto) every week, her husband never played because he thought it was a waste of money they should be saving in order to buy a house. During the third week of August 1985, however, defendant and 21 of his co-workers each contributed one dollar toward the purchase of lottery tickets and won the grand prize of $13½ million. Defendant is to receive 21 annual gross installments of $30,989 netting him a total of $24,790 a year, after taxes. These winnings, as the Supreme Court found, are the parties' only substantial marital asset and form the basis of the instant dispute.

The 31-year-old plaintiff is currently employed as a travel agent earning $17,732 a year and had been so employed throughout her marriage. Defendant, 32 years old, was employed as a mechanic but has since been promoted to inspec-

tor. His gross salary is approximately $30,000 a year. At the commencement of this action, the parties had been married for five years. The marital residence was a rented apartment which defendant vacated on December 15, 1985. During the marriage, the parties used the wife's paycheck for living expenses and deposited the husband's paycheck into a joint savings account. After the lottery, however, defendant placed his winnings into a separate account to which only he had access.

After determining that the lottery winnings were "marital property" as defined by Domestic Relations Law § 236 (B) (1) (c), and after analyzing the factors set forth in Domestic Relations Law § 236 (B) (5) (d), the Supreme Court awarded plaintiff only 15% of the lottery winnings as her share under the Equitable Distribution Law because the lottery ticket was acquired solely through the efforts of defendant. We find that a more equitable distribution would be to divide the lottery winnings equally and modify the judgment accordingly.

The parties do not dispute the finding that the lottery winnings are marital property subject to equitable distribution pursuant to Domestic Relations Law § 236 (B) (1) (c); (5) (c) *(see, Ullah v Ullah,* 161 AD2d 699; *Mir v Mir,* 135 AD2d 690; *Lynch v Lynch,* NYLJ, Nov. 10, 1988, at 28, col 1 [Sup Ct, Westchester County]; *Jordan v Jordan,* NYLJ, Aug. 20, 1985, at 11, col 6 [Sup Ct, Kings County]). Domestic Relations Law § 236 (B) (5) (c) provides that "[m]arital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties." The Equitable Distribution Law creates a presumption that marital property consists of "all property acquired by either or both spouses during the marriage * * * regardless of the form in which title is held" (Domestic Relations Law § 236 [B] [1] [c]; *Jordan v Jordan, supra).* The lottery winnings are marital property even though they were acquired by the efforts of defendant *(Ullah v Ullah, supra).*

Although there is no requirement that the distribution of each marital asset be on an equal or 50-50 basis *(Arvantides v Arvantides,* 64 NY2d 1033, 1034), it has been stated that where both spouses equally contribute to the marriage which is of long duration, a division should be made which is as equal as possible *(Bisca v Bisca,* 108 AD2d 773, 774, *appeal dismissed* 66 NY2d 741). The parties herein were employed throughout their marriage and equally contributed to the economic family unit through their salaries as well as to the maintenance of the household. Although defendant deposited

his winnings into a separate bank account, he testified that the money was to be used to buy a house for his family. It is also clear that the winning ticket purchased by defendant, like those lottery tickets purchased on a weekly basis by plaintiff, was purchased with marital funds for which both parties worked *(Ullah v Ullah, supra)*. We note that the small amounts of money won by plaintiff over the years through her lottery investments were placed in the couple's joint account.

We reject defendant's theory that the winning ticket might have been purchased with a dollar he found on the street the day before while walking the dog. We further reject the contention that defendant should receive a greater share of the prize because the winning ticket was obtained through his own initiative *(Ullah v Ullah, supra; cf., Lynch v Lynch, supra; Jordan v Jordan, supra)*. Plaintiff testified that this was the only time defendant ever played Lotto and that he only contributed the dollar to the pool with his co-workers because if he had refused and they won, plaintiff would have been angry with him. Obtaining a winning lottery ticket requires little effort or investment. *(Ullah v Ullah, supra)*. The lottery winnings, while possibly obtained by the efforts of one party, "[were] predominantly the result of fortuitous circumstances and not the result of either spouse's toil or labor" *(Ullah v Ullah, supra,* at 700).

Based on the equal contributions made by both parties to the marriage, their treatment of their marriage as a partnership, the fact that previous winnings of plaintiff were treated as joint property and the fact that the lottery winnings are the couple's only significant asset, an equal division of the lottery winnings is warranted. Concur—Ross, J. P., Rosenberger, Ellerin and Wallach, JJ.