In re the MARRIAGE OF Robert Wayne
SWARTZ and Madonna M. Swartz.

Upon the Petition of Robert Wayne
Swartz, Petitioner–Appellee,

And Concerning Madonna M. Swartz,
Respondent–Appellant.

No. 93–222.

Court of Appeals of Iowa.

Dec. 29, 1993.

James L. Sayre of James L. Sayre, P.C.,
Des Moines, for respondent-appellant.

John P. Dollar of Bowers, Wilson, Dollar &
Kruse, Des Moines, for petitioner-appellee.

Heard by OXBERGER, C.J., and
SACKETT, J., and KEEFE, S.J.*

SACKETT, Judge.

In this appeal from a decree dissolving a
ten-year marriage, the primary issue is the
equity of the trial court dividing equally be-
tween the parties the winnings from a lottery
ticket purchased during the marriage. We
affirm.

Petitioner-appellee Robert Wayne Swartz
and respondent-appellant Madonna M.
Swartz were married in 1983. They both
had been married previously. At the time of
the marriage, Robert was determined dis-
abled by the Social Security Administration
and received $600 to $700 a month in disabili-
ty benefits. Madonna was working for Iowa
Power and Light and continued that employ-
ment until August 1988. Her yearly income
during that period increased from about $13,-
000 to $19,000 annually. Robert had no chil-
dren. Madonna had two children, aged 13
and 15, from a prior marriage. One of these
children received between $325 and $350 in
social security benefits on Robert's account
and the other child received about $700 in
benefits on the account of her deceased fa-
ther. No children were born to this mar-
riage.

At the time of marriage, the only asset of
significance was Robert's home, built in 1977
for about a $100,000 and encumbered by a

---

* Senior judge from the 1st Judicial District serving
on this court by order of the Iowa Supreme

Court.

mortgage of $73,000. The current mortgage balance on the home is $64,000.

In 1988, Madonna purchased a winning lottery ticket. The payout on the ticket over a twenty-year period was to be $7.2 million. The current worth of the winnings at the time of the dissolution was not established. The evidence was it will net a payment of $271,500 annually.

■■■ We review de novo. Iowa R. of App.P. 4; Iowa R. of App.P. 14(f)(7). The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell,* 473 N.W.2d 244, 246 (Iowa App.1991). Iowa courts do not require an equal division or percentage distribution. *Id.* The determining factor is what is fair and equitable in each circumstance. *Id.* The distribution of the property should be made in consideration of the criteria codified in Iowa Code section 598.21(1). *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983).

The trial court, in dividing the property, arrived at what it considered a fair allocation of assets, noting there were significant monies to assure Robert and Madonna would both have adequate resources. The trial court gave Madonna and Robert each a one-half interest in the lottery proceeds.

Madonna contends the trial court should not have divided the lottery winnings equally but rather should have given the winnings to her and ordered her to pay Robert substantial alimony during his lifetime. Robert contends the trial court correctly divided the lottery winnings. The Iowa appellate courts have not yet addressed the specific issue of the division of substantial lottery winnings in a dissolution.

Madonna advances lottery winnings are more akin to her future earning capacity than they are to property. Madonna extends this argument to argue lottery winnings should, therefore, be treated as future earnings and we should apply the dictates of cases considering the issue of future earnings on alimony awards. Madonna also urges such a result is more equitable because Robert is in poor health and without lineal descendants while she has two daughters and two grandchildren. Currently, Robert's heirs at law are his mother and sister.

Madonna also contends we should consider the fact she was the wage earner during the marriage in assessing the equities. Madonna worked outside the home. Robert; however, contributed with his social security disability and provided a pool for social security benefits for Madonna's younger daughter. Madonna had two children in the home for a portion of the marriage.

The roles assumed in this marriage were roles the parties agreed to assume. We approach these issues from a gender-neutral position and avoid sexual stereotypes. *See In re Marriage of Pratt,* 489 N.W.2d 56, 58 (Iowa App.1992); *In re Marriage of Bethke,* 484 N.W.2d 604, 608 (Iowa App.1992). To do otherwise would provide different treatment on the basis of sex. *See Orr v. Orr,* 440 U.S. 268, 278–79, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306, 318–19 (1979).

Robert continues to receive disability benefits and has problems following a 1979 kidney transplant. Madonna is in good health. Robert at the time of the dissolution was 62; Madonna was 45.

Robert argues while the lottery receipts may be income, they are not earnings and, consequently, Madonna's attempt to bootstrap in the cases on alimony from earnings is misplaced.

■■ The lottery receipts are not earnings. We distinguish *In re Marriage of Francis,* 442 N.W.2d 59, 62 (Iowa 1989); and *In re Marriage of Horstmann,* 263 N.W.2d 885, 891 (Iowa 1978). The income of the doctor in *Francis* and of the lawyer in *Horstmann* was dependent on their performing services over a course of time and was not a fixed amount at the time of dissolution. The amount of the lottery winning is clearly fixed and will be constant.

A review of cases from other jurisdictions addressing the issue of division of lottery winnings would indicate the other jurisdictions have almost uniformly held lottery winnings to be assets. *See Ullah v. Ullah,* 161 A.D.2d 699, 555 N.Y.S.2d 834 (1990); *Smith v. Smith,* 162 A.D.2d 346, 557 N.Y.S.2d 22

(1990); *Alston v. Alston,* 85 Md.App. 176, 582 A.2d 574 (1990); *Mahaffey v. Mahaffey,* 206 Ill.App.3d 859, 151 Ill.Dec. 638, 564 N.E.2d 1300 (1990); *Giedinghagen v. Giedinghagen,* 712 S.W.2d 711 (Mo.App.1986); *Giha v. Giha,* 609 A.2d 945 (R.I.1992).

 We do not find the fact Madonna was the one who paid the dollar for the ticket relevant. The trial court determined under the facts of this case an equal division of the lottery winnings was equitable. We find no reason to depart from that reasoning.

 Madonna next contends the house that was set aside to Robert was valued at less than current value. The trial court valued the property at $127,500. Madonna contends this is the amount Robert had invested in the property at the time of the marriage and it is not a correct valuation because $86,000 of lottery winnings were invested in the house and in Robert's initial financial statement he represented the property as worth $215,000. A real estate agent with Caldwell Banker Mid–America Group who had been a licensed real estate agent since 1974 testified. He said he had knowledge of the residential real estate market in the area of the parties' home. He checked courthouse records and viewed the property. He determined some of the improvements were a detriment because they would not be attractive to the average buyer.

The home was assessed by the Dallas County Assessor at $119,000 and the real estate agent was of the opinion Dallas County assessments are generally within a 75 percent to 125 percent range of market value. Madonna claimed $86,000 of lottery money was put into the house. The trial court found $29,000 was spent on the house and the balance was spent on maintenance and furnishing. The trial court found the real estate agent's value of the home the most credible evidence of the house's value. We find the value placed on the assets by the trial court to be well within the permissible range of evidence and will not disturb them on appeal. *See In re Marriage of Bare,* 203 N.W.2d 551, 554 (Iowa 1973); *In re Marriage of Griffin,* 356 N.W.2d 606, 608 (Iowa App.1984).

The division made by the trial court was equitable. We affirm.

**AFFIRMED.**