OPINION OF THE COURT
Anthony J. Falanga, J.
This is a motion by the husband for an order restraining the wife and her agents, during the pendency of the action, from *673 making any disposition of separate and/or marital assets, including $8,590,077 in lottery winnings; and for a further order requiring the defendant to place the sum of $3,500,000 in the husband’s name or in escrow and directing them to provide an accounting of the disbursements of said lottery winnings.
The following facts are not in dispute: The parties were married on June 20, 1987. At the time of the marriage, the husband was 61 and the wife was 58 years old. Both parties had been widowed. The husband is presently 77 and the wife is 74 years old. The husband has five adult children from a prior marriage. The wife has three adult children from a prior marriage.
In June 1987, prior to their marriage, the parties executed and acknowledged a written agreement waiving their respective rights of election in the other’s estate. Said agreement also provides, to wit: “In the event of a divorce, separation of the parties or annulment of the marriage no claims shall be made by either party against the other’s title and interest in his or her separate and sole property * * * Sole and separate property shall include any real or personal property individually owned by either party whether the same be acquired prior to or subsequent to the execution of this agreement and marriage of the parties. Marital property shall include only such real or personal property held jointly or by the entirety.”
During the marriage, the parties lived modestly in a rental apartment. The husband had income of approximately $2,100 to $2,400 a month from Social Security and a pension. The wife received $400 a month Social Security and a pension, in an undisclosed monthly amount. The parties maintained a joint checking account. The wife received a personal injury settlement of $18,000 and did not deposit said funds into the joint account.
The parties vacationed in Las Vegas and Atlantic City on various occasions. They both gambled during such trips. The wife regularly played the New York State lottery using the same sets of numbers comprised of family birth dates and ages.
On February 12, 2003, a lottery ticket purchased by the wife was the only winning ticket of a $25,000,000 lottery prize. On March 6, 2003, the parties and one of the wife’s children took a limousine to Madison Square Garden to collect a check for $8,590,077. The check was made payable to the wife. There are additional taxes due on said winnings of $1,300,000. On March 7, 2003, the parties met with an accountant. On March 8, 2003, they met with an agent from Merrill Lynch. On March 19, 2003, the parties signed a contract to purchase a condominium *674 in Melville for $490,000. On April 8, 2003, the wife placed the lottery winnings into the Concelia Parker Living Trust. As of April 25, 2003, said trust had $8,000,950.69 on deposit in a Merrill Lynch account. The trust document provides that upon the wife’s death, the husband receives any residence in which he resides at the time of her death. In addition, he receives the income from $500,000 segregated into a marital trust. The balance of the trust passes to the wife’s children. Both parties attended the closing of the Melville condominium on April 25, 2003. Title to the condominium was placed in the name of the Concelia Parker Living Trust. The husband commenced the instant action for divorce or separation on May 22, 2003. Prior to the commencement of the action the wife made certain gifts of the lottery winnings to her children. No details have been provided with regard to said gifts. The husband does not have access to the Melville condominium.
The husband contends that during the marriage he paid all the household bills; that he never asked the wife for “a dime”; that she was free to spend her retirement funds as she saw fit; that he never received any portion of the wife’s personal injury settlement despite the fact that he spent $3,300 to fund the litigation; that he paid $15,000 for the wife’s daughter’s wedding; that he lent her son $8,000 and her daughter $3,300; that he and the wife always shared gambling winnings on their trips to Las Vegas and Atlantic City; that he and the wife “always purchased lottery tickets in the past with the use of joint funds”; that he gave the wife the $20 she used to purchase the winning ticket; that lottery officials told him it “didn’t matter” if one or both parties’ names were on the check; that he used $1,500 of funds from the parties’ joint account as a deposit on the Melville condominium; and that he was “led to believe” he would have joint access by means of a checkbook and credit card to the trust funds on deposit in Merrill Lynch.
The wife contends that she contributed her late husband’s pension check toward household expenses and supported herself and paid all her own bills with her late husband’s Social Security; that the husband herein never gave her “even a quarter” for gambling in Las Vegas and Atlantic City; that he never shared gambling winnings with her; that her lottery tickets were always purchased with her separate property, to wit: her personal injury proceeds or Social Security; that the husband encouraged her to make gifts of the lottery winnings to her children; and that other than said gifts, she has not made any disbursements of the lottery winnings except in the ordinary course of living.
*675 Based upon all of the foregoing, the motion is decided as follows: The law is well settled that a lottery prize won during a marriage is generally considered property acquired during the marriage subject to equitable distribution pursuant to Domestic Relations Law § 236 (B) (see, Campbell v Campbell, 213 AD2d 1027 [1995]; Smith v Smith, 162 AD2d 346 [1990], lv denied 77 NY2d 805 [1991]; Ullah v Ullah, 161 AD2d 699 [1990], lv denied 76 NY2d 704 [1990]). There is no reported precedent governing the effect of a prenuptial “opting-out” agreement vis-a-vis lottery winnings won during a marriage. The issue herein, of the husband’s entitlement to equitable distribution of the proceeds paid to the wife by the New York State lottery, appears to be of first impression.
The husband’s summons with notice does not set forth a cause of action to set aside the prenuptial agreement dated June 1987, nor has he asserted allegations that said agreement is the unconscionable product of overreaching, fraud, duress or mutual mistake. Said agreement clearly states that the only property subject to equitable distribution is property held in joint name. The lottery proceeds in issue are not held in joint name. Accordingly, pursuant to the terms of the June 1987 agreement, the winnings are, prima facie, the wife’s separate property, not subject to equitable distribution.
The husband’s summons with notice does, however, seek a determination that the lottery winnings are the joint property of the parties. The court has the authority, in an action for divorce and/or separation, to decide questions of title pursuant to Domestic Relations Law § 234.
An oral agreement to share lottery winnings is valid and enforceable (see, Johnson v Spence, 286 AD2d 481 [2001]; Maffea v Ippolito, 247 AD2d 366 [1998]; Edwin v Arackal, 241 AD2d 335 [1997]; Kelkenberg v Anderson, 237 AD2d 972 [1997]; Johnson v Johnson, 191 AD2d 257 [1993]; Smith v Smith, supra; Pando v Fernandez, 118 AD2d 474 [1986]). The husband has the burden of proving at the trial that the parties made a certain and specific mutual promise to share the subject lottery winnings; that the purchase of the winning ticket by the wife was in furtherance of the parties’ “joint venture”; and that the wife breached the parties’ agreement by refusing to share the winnings with him (see, Johnson v Spence, supra; Maffea v Ippolito, supra; Edwin v Arackal, supra; Kelkenberg v Anderson, supra; Smith v Smith, supra; Pando v Fernandez, supra).
If the husband had brought a breach of contract action against the wife seeking a portion of the lottery winnings, *676 rather than a matrimonial action, he would have been entitled to a preliminary injunction pursuant to CPLR 6301 only upon a showing that he was likely to succeed on the merits, would suffer irreparable harm absent interim injunctive relief, and that the balance of the equities were in his favor (see, Neos v Lacey, 291 AD2d 434 [2002]).
Generally, a party seeking monetary relief to redress a breach of contract claim has a remedy at law, to wit: a money judgment, and is not entitled to preliminary injunctive relief, as he or she cannot show irreparable harm (see, Credit Agricole Indosuez v Rossiyskiy Kredit Bank, 94 NY2d 541 [2000]). However, in actions where the subject matter is a specific fund of money, such as lottery winnings, preliminary injunctive relief may lie upon the requisite showing of the likelihood of success on the merits and that the balance of the equities lies in the movant’s favor (see, Credit Agricole Indosuez v Rossiyskiy Kredit Bank, supra; Bashein v Landau, 96 AD2d 479 [1983]).
Here, the husband’s allegations do not set forth sufficient detail to demonstrate a likelihood of success on the merits, as he has asserted nothing more than broad, vague generalizations about the ongoing purchase of lottery tickets by the wife with joint funds, and the sharing of gambling winnings, all of which allegations are denied by the wife. Further, it is undisputed that the wife had separate funds available to her to use to purchase lottery tickets. Accordingly, if the husband had commenced a breach of contract action rather than a matrimonial action, he would not be entitled to preliminary injunctive relief.
In the context of a matrimonial action, a party seeking an interim restraint on the disposition of assets is not required to meet the burden of proof required by CPLR 6301. Pursuant to Domestic Relations Law § 234, a matrimonial litigant need only demonstrate that an interim restraint is required to preserve his or her right to an equitable share of marital assets (see, Leibowits v Leibowits, 93 AD2d 535 [1983]; see also, Maillard v Maillard, 211 AD2d 963 [1995]; Drazal v Drazal, 122 AD2d 829 [1986]).
In the within case, the husband has asserted a “joint venture” claim to the lottery winnings in issue and in the event he succeeds on said claim, such winnings would constitute a marital asset subject to equitable distribution. The court has the authority, during the pendency of an action, to restrain the disposition of an asset that is claimed to be marital, without weighing the merits of the claim, if it finds that such restraint *677 is necessary to protect the claimant’s possible entitlement to an equitable share of the asset upon the disposition of the action (see, Capolino v Capolino, 174 AD2d 825 [1991]; Drazal v Drazal, supra; Rosen v Rosen, 161 Misc 2d 795 [1994]).
Here, it is undisputed that the wife has assumed unilateral ownership and control of the lottery winnings; that she has gifted undisclosed sums to her children; that she placed the winnings in a trust naming herself as sole trustee and her children as beneficiaries, except for a limited provision for the husband; and that she has undertaken a course of conduct clearly designed to insulate the funds from any claim by the husband. Further, the winnings constitute a specific fund that is the subject of a title dispute before the court, and if said funds are determined by the court to be marital, they would comprise the only marital asset of substantial value, subject to equitable distribution (see, Chosed v Chosed, 116 AD2d 690 [1986]).
Based upon all of the foregoing facts and circumstances, the court finds that the husband is entitled to interim relief pursuant to Domestic Relations Law § 234. Accordingly, his motion is granted to the following extent: It is hereby ordered that pending further order of the court, the wife, individually and as trustee of the defendant trust, her agents, attorneys and assigns are restrained from making any disposition of $3,000,000 of the lottery winnings that were on deposit in the Merrill Lynch account as of April 25, 2003. The husband’s application for an accounting is denied as he may obtain an accounting of any disbursements of the lottery winnings through discovery proceedings. Any relief not specifically addressed is denied.