# IN THE COURT OF APPEALS OF IOWA

No. 16-1446
Filed June 21, 2017

IN RE THE MARRIAGE OF LISA ANNE DUFFY
AND MICHAEL J. DUFFY

Upon the Petition of
LISA ANNE DUFFY, n/k/a LISA ANNE MORRISON,
        Petitioner-Appellant,

And Concerning
MICHAEL J. DUFFY,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Robert E. Sosalla,

Judge.

        Petitioner appeals from the provisions of the dissolution decree dividing

the parties' property, awarding spousal support, and awarding attorney fees.

Petitioner also appeals the trial court's denial of her motion for new trial.

**AFFIRMED AS MODIFIED.**

        Laura E. Bergus of Hayek, Moreland, Smith & Bergus, L.L.P., Iowa City,

for appellant.

        Rebecca A. Feiereisen of Arenson Law Group, P.C., Cedar Rapids, for

appellee.

        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Lisa Duffy appeals the property provisions of the dissolution decree and the denial of her motion for new trial. She claims the trial court erred in dividing the property, awarding attorney fees, and determining the amount of spousal support. We affirm the district court's property division and award of attorney fees, but we modify the equalization payment from $69,817.30 to $74,439.83. We affirm the trial court's denial of Lisa's motion for new trial.

**I. Background Facts and Proceedings**.

Lisa and Michael Duffy were married in 1992. At the time of trial, Lisa was forty-five and Michael was forty-six years old. Four children were born of the marriage, but the children reached the age of eighteen before the time of trial.

Michael earned a bachelor's degree. After college, Michael worked multiple jobs to support the family. Eventually, Michael and Lisa purchased Match Play Tennis Centers (Match Play) for five dollars. At the time of trial, Michael was a fifty percent owner[1] in Match Play, where he also worked full-time and received a salary of $85,819.76. He also received a management fee of $32,500. Michael's income was based on a management agreement between Match Play and Rockwell Collins, which requires Match Play to furnish recreation services to Rockwell's employees. Michael also entered into a buy-sell agreement with the other Match Play owner in which each owner agreed to a buyout price of $86.67 per share. It is unclear how the owners came up with the valuation. Match Play has no other management or service agreements.

---

[1] An unrelated individual owns the remaining fifty percent of Match Play.

Lisa also earned her bachelor's degree. The parties both decided that Lisa would care for the house and children. Beginning in1998, Lisa worked for United Parcel Service (UPS) for approximately five years. She also worked at Coe College for approximately three months in 2007. Lisa was not employed at the time of trial.

Lisa suffers from multiple health-related issues, including arthritis, chronic sinusitis, recurring MRSA infections, ADHD, hypothyroidism, Steven Johnson syndrome, depression, and anxiety. Lisa applied for social security disability benefits based on her medical conditions. The request was initially rejected and Lisa's appeal was pending during trial. After the trial ended and the decree had been filed, Lisa received a notice of award letter granting Lisa's appeal, in which it was determined she became disabled on April 13, 2007.

On January 22, 2014, Lisa filed a petition for dissolution of marriage. At trial, the court heard contradicting testimony about multiple assets and liabilities. The parties disagreed about the value of the home, whether $25,000 from Michael's mother was a loan, and whether the Match Play credit card balance was marital debt.

The court also heard testimony from Denny Redmond, Match Play's accountant. Redmond testified that Match Play had no value. His opinion was based on Match Play's status as an S-corporation, which passes all the net income and expenses through to the shareholders based on a pro-rated share of the stock ownership. Redmond confirmed the business had no assets other than a contract that paid the owners a management fee. The contract could be

terminated at any time with sixty days' notice. Redmond also testified that owners' salaries should not not used to determine a corporation's value.

On June 27, 2016, the court issued its decree dividing the parties' assets equally, awarding attorney fees, and requiring an equalization payment from Michael to Lisa. The court determined the $25,000 from Michael's mother was a loan and assigned the debt to Michael. The court also determined the Match Play credit card balance was marital debt and assigned the debt to Michael. Based on its valuation of the assets, the court concluded Michael should pay Lisa an equalization amount of $74,439.83. However, the court's order instructed Michael to pay only $69,817.30. The court also awarded Lisa $5000 in attorney fees.

Based in part on the discrepancy between the equalization payment amounts in the decree, Lisa filed a motion to reconsider, amend, and enlarge the trial courts filings. She also filed a motion for new trial arguing the "newly discovered" disability award would have changed the results of the trial. The trial court denied both motions. Lisa appealed.

**II. Standard of Review.**

An action for the dissolution of marriage is an equitable proceeding. Iowa Code § 598.3 (2014). Therefore, our review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012). Although we give weight to the factual determinations of the trial court, especially regarding credibility determinations, its findings are not binding upon us. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009). We examine the entire record and adjudicate anew rights on the issues properly

presented.  *In re Marriage of Ales*, 592 N.W.2d 698, 702 (Iowa Ct. App. 1999). We give the trial court considerable discretion in awarding spousal support and will disturb its award only when the decree fails to do equity.  *In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998).

We review the trial court's award of attorney fees for an abuse of discretion.  *See In re Marriage of Grady-Woods*, 577 N.W.2d 851, 854 (Iowa Ct. App. 1998).

We review a trial court's ruling on a motion for new trial on the grounds of newly discovered evidence for an abuse of discretion.  *In re Marriage of Wagner*, 604 N.W.2d 605, 609 (Iowa 2000).

III. **Discussion**.

**a. Property Division.**

Lisa claims the trial court erred in dividing the parties' property.  She argues the trial court undervalued the marital home, undervalued Match Play, and made a mathematical error in determining the equalization payment.  She also argues $25,000 received from Michael's mother and the credit-card debt related to Match Play are not marital debt.

**1. *Property Valuation.***  Lisa claims the court undervalued Michael's business, Match Play.  She argues the trial court should not value the business at zero dollars, but she does not suggest an appropriate valuation.  She also argues the stock price in the buy/sell agreement suggests the business has value.

At trial, an accountant testified that Match Play had no value.  The opinion was based on the structure of Match Play as an S-corporation, which passes its

net income and expenses to Michael and the other owner. The expert stated the business has no assets. Moreover, the $86.67 per share stock price is based on the owners' salaries and it does not reflect a current market value. The trial court's valuation matched the expert's valuation. Generally, valuations within the permissible range of the evidence will not be disturbed on appeal. *See In re Marriage of Steele*, 502 N.W.2d 18, 21 (Iowa Ct. App. 1993); *see also In re Marriage of Alexander*, 478 N.W.2d 420, 422 (Iowa Ct. App. 1991). We also note the income received from Michael's management of Match Play was accounted for in other areas of the decree.

Lisa also claims the trial court undervalued the marital home. She argues a number of improvements—such as a new roof, gutters, furnace, water heater, and air conditioner—warrant a larger home valuation.

Based on evidence introduced at trial, the Linn County Assessor's website reflected the marital home's assessed value at $166,400. Lisa testified the home was worth $186,000. Lisa's opinion was based on her knowledge of the real estate market and various improvements made to the house. She also introduced multiple real-estate websites estimating the value of the home between $192,300 and $206,436. Michael testified recent flood damage reduced the value of the home to $150,000. The court valued the home at $166,400 in its decree. The court's determination is within the permissible range of evidence introduced at trial. *See In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973) ("The [real-estate] valuation found by [the] trial court was well within the permissible range of the evidence, and we are not inclined to disturb it."); *see also In re Marriage of Swartz*, 512 N.W.2d 825, 827 (Iowa Ct. App. 1993)

(affirming trial court's $127,500 real-estate valuation where assessed value was $119,000 and appellant's valuation was $215,000).

**2.** ***Marital Debts.*** Lisa next claims the trial court should not have categorized the $25,000 received from Michael's mother and the business debt on a joint credit card as marital debt.[2]

"[T]he allocation of marital debts inheres in the property division." *In re Marriage of Johnson*, 299 N.W.2d 466, 467 (Iowa 1980). "Even though a debt may have been incurred by a party for family expenses, it is not inequitable to order that party to be responsible for the entire amount of the debt as long as the overall property distribution is equitable." *In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006). "Debts of the parties normally become debts of the marriage, for which either party may be required to assume the responsibility to pay." *Id.*

Lisa argues the money provided by Michael's mother was never intended to be a loan. Intra-family loans are assigned as marital debts when the record suggests the funds were intended to be repaid. *See In re Marriage of Vrban*, 359 N.W.2d 420, 427 (Iowa 1984) (holding the word "loan" written on the check supported a finding that the monies received were marital debts); *see also In re Marriage of Morrissey*, 669 N.W.2d 263 (Iowa Ct. App. 2003) ("In this case, there

---

[2] Lisa also claims, "The amount owed on the Chevrolet Blazer is not marital debt." However, based on the parties' financial affidavits, there is no debt on the Chevrolet Blazer. It appears Lisa would like us to modify the district court's decision applying the proceeds of the sale of the Blazer to the debt to Michael's mother, but the parties stipulated the sale proceeds would go to Michael's mother. Lisa fails to cite any authority or develop her argument that a stipulation from the parties should be reversed on appeal. Therefore, we decline to address her claim on appeal. *See Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 431 n.2 (Iowa 2002) (holding random mention of issue, without elaboration or supporting authority, is insufficient to merit appellate consideration).

is nothing in the record to suggest that the moneys were to be repaid other than Sean and his mother's testimony."). Here, Michael's mother testified that she intended the money to be a loan and Lisa was aware of the loan. Michael also testified the money was intended to be a loan. The record shows the parties repaid approximately $6600 of the loan to Michael's mother, which also suggests it was intended to be a loan. We decline to upset the trial court's determination that the money from Michael's mother was marital debt. *See Sullins*, 715 N.W.2d at 251 ("The district court found the evidence did not support [appellant's] claim, and we decline to disturb the district court's credibility judgment.").

Similarly, the credit card debt from Michael's company was properly allocated as a marital debt. Lisa argues the debt was incurred in the course of Michael's business dealings. However, the record suggests the parties used the credit card for personal and business expenses. Items charged to the credit card for business expenses were reimbursed by Match Play, and the reimbursement proceeds were often transferred into the parties' personal accounts. Thus, much of the debt incurred in the course of Michael's business activity was later "converted" to marital debt when the reimbursement proceeds were used for marital expenses. The trial court properly included the credit card as marital debt.

*3. Equalization Payment.* Lisa claims the trial court made an error in the provisions of the decree ordering Michael to pay a $69,817.30 equalization payment while the trial court's distribution chart showed a $74,439.83 equalization payment. Michael argues the court intended to order an

equalization payment of $69,817.30, although in his response to Lisa's post-trial motion he conceded the district court intended the $74,439.83 amount.

Iowa is an equitable distribution state. *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013). Under section 598.21, all of the parties' property, except inherited property or gifts, should be equitably divided between the parties. *Sullins*, 715 N.W.2d 242, 247. Equitable distribution depends upon the circumstances of each case, and it does not necessarily mean equal distribution. *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). "Equality is, however, most often equitable." *McDermott*, 827 N.W.2d at 682.

We agree with the trial court, a "close to fifty-fifty allocation of [the parties'] assets" is equitable. However, the ordered equalization payment does not equal the property division valuation in the decree. In its order, the court assigned Michael $144,257.13 in assets net of the assigned debt. The court assigned Lisa negative $4622.53 in assets net of the assigned debt. The difference in the parties' assets is $148,879. To equalize the property discrepancy, the court ordered Michael to pay Lisa $74,439.83 under the "Property Division" section of the decree. However, under the "Property Equalization" section the court ordered a $69,817.30 payment from Michael to Lisa. A $74,439.83 equalization payment results in a fifty-fifty allocation of the parties' assets based on the trial court's net-asset determination. Accordingly, Michael must pay a $74,439.83 equalization payment to Lisa.

**b. Spousal Support.**

Lisa claims the spousal-support award of $3000 per month for thirty months[3] is insufficient because the support should continue until Lisa's death and not decrease over time. She also claims the type of support is incorrect.

As a preliminary matter, we note Iowa law recognizes three forms of alimony—traditional, rehabilitative, and reimbursement. *See In re Marriage of Probasco*, 676 N.W.2d 179, 184 (Iowa 2004). However, we are not required to award any one type of alimony, and our focus is whether the award is equitable under the facts of each case. *See In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008) ("[T]here is nothing in our case law that requires us, or any other court in this state, to award only one type of support.").

In determining the amount of spousal support, we utilize the following statutory factors: (1) the length of marriage; (2) the age and emotional and physical health of the parties; (3) the property distribution; (4) the educational level of the parties at the time of marriage and when the dissolution action is commenced; (5) the earning capacity of the party seeking alimony, including educational background, training, employment skills, work experience, and length of absence from the job market; and (6) the feasibility of the alimony seeking party to become self-supporting with a reasonably comparable standard of living to that enjoyed during the marriage. Iowa Code § 598.21A(1); *see also Hansen*, 733 N.W.2d at 704. Spousal support is not an absolute right, and an award

---

[3] After thirty months, the spousal-support obligation decreases from $3000 per month to $1500 per month until "such time as Lisa qualifies to receive social security retirement benefits." At that time, Michael's support obligation is $750 per month until Lisa's death.

depends on the facts and circumstances of each case. *Schenkelberg*, 824 N.W.2d at 486.

The parties were married for twenty-four years, and Lisa is approaching retirement in poor health. At the time of trial, Lisa was forty-five and Michael was forty-six years old. Both parties made significant contributions to the marriage, and Lisa has limited earning capacity due to her health and limited workforce experience. These factors weigh in favor of a spousal support award. *See In re Marriage of Gust*, 858 N.W.2d 402, 410 (Iowa 2015) (holding marriages lasting twenty or more years "merit serious consideration for traditional spousal support"). Under the decree, Michael is also required to pay the remaining $16,796 debt to his mother, two credit card balances totaling $21,684.93, and various unpaid medical bills. The trial court determined Michael's disposable income is $8000 per month and his monthly expenses are approximately $4678 before the spousal-support obligation. Any additional support over $3000 per month is unreasonable based on the parties' monthly expenses compared to their respective incomes. *See In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983); *see also In re Marriage of Shepperd*, No. 14-1766, 2015 WL 7075750, at *3 (Iowa Ct. App. Nov. 12, 2015) ("The amount of spousal support awarded should not destroy the right of the party providing the support to also enjoy a comparable standard of living."). We agree with the trial court's spousal-support determination.

**c. Attorney Fees.**

Lisa claims the trial court abused its discretion in awarding her $5000 in attorney fees. She argues Michael has the ability to pay additional funds, but she does not state how much.

Trial courts are given considerable discretion in awarding attorney fees. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa Ct. App. 1983). "Trial courts are familiar with the value of services in dissolution matters. Most of the services for which compensation was allowed were rendered during trial before the judge who made the award. Trial courts have considerable discretion in fixing fees." *In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977).

Lisa cites *In re Marriage of Mugge* to support her argument. No. 07-0079, 2008 WL 4525839 (Iowa Ct. App. Oct. 1, 2008). In *Mugge*, however, the trial court awarded $20,000 in attorney fees based, in part, on the appellee's failure to disclose certain assets, which required the appellant "to incur unnecessary amounts of attorney fees." *Id.* at *5. Here, no such nefarious activity exists in the record to require an increase in Lisa's attorney-fee award. Furthermore, the trial court accounted for Michael's increased ability to pay attorney fees when it awarded Lisa $5000 in attorney fees. The trial court outlined Michael's increased monthly expenses based on the $3000 per month spousal-support obligation. Michael was also issued the majority of the marital debt, which increased his monthly expenses. Accordingly, the trial court did not abuse its discretion in requiring Michael to pay Lisa $5000 in attorney fees.

**d. Motion for New Trial.**

Lisa claims she should be granted a new trial because she was unable to reasonably obtain or produce a notice of decision awarding her social security disability benefits, which, she argues, would have changed the outcome of the spousal support order in this case. Michael, on the other hand, argues the information was not available at trial, and the trial court was aware of Lisa's appeal

Under Iowa Rule of Civil Procedure 1.1004(7), a new trial may be granted if "[m]aterial evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at the trial." Additionally,

> [t]rial courts have broad but not unlimited discretion in ruling on motions for new trials. We do not favor motions for new trial based on newly discovered evidence. We will not disturb the trial court's ruling unless the evidence clearly shows the court has abused its discretion. We will only find an abuse of discretion if the trial court clearly exercised its discretion on untenable grounds or acted unreasonably.

*Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995) (citations omitted). Lisa must demonstrate three prongs to succeed on her claim: "(1) the evidence is newly discovered and could not, in the exercise of due diligence, have been discovered prior to the conclusion of the trial; (2) the evidence is material and not merely cumulative or impeaching; and (3) the evidence will probably change the result if a new trial is granted." *Id.*

We are not convinced this is an extraordinary case in which a new trial should be granted. "Newly discovered evidence" must exist at the time of trial. *Id.* at 763. Here, the trial ended on March 17, 2016. Although the disability appeal decision is dated March 11, 2016, the Social Security Administration did

not send the letter until April 16, 2016. The evidence did not exist at the time of trial; the trial court did not abuse its discretion in denying Lisa's motion for new trial.

**IV. Conclusion.**

We hold the division of the parties' assets and debts is equitable, and we decline to alter the trial court's award of trial attorney fees. Based on the courts valuation of the parties' net assets, we modify the equalization payment from $69,817.30 to $74,439.83. Furthermore, the trial court did not abuse its discretion in denying the motion for new trial.

**AFFIRMED AS MODIFIED.**