Flom v Flom (2019 NY Slip Op 01643)





Flom v Flom


2019 NY Slip Op 01643


Decided on March 7, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 7, 2019

Sweeny, J.P., Richter, Kern, Singh, JJ.


8110 305964/10

[*1]Jason Flom, Plaintiff-Respondent-Appellant,
v
Wendy Flom, Defendant-Appellant-Respondent.


Greenspoon Marder LLP, New York (Brianne Copp of counsel), for appellant-respondent.
Law Offices of John A. Kornfeld, LLP, New York (John A. Kornfeld of counsel), for respondent-appellant.



Judgment of divorce, Supreme Court, New York County (Michael L. Katz, J.), entered March 6, 2017, which, to the extent appealed from as limited by the briefs, distributed 40% of certain marital assets to defendant wife and 60% to plaintiff husband minus any withdrawals made by defendant since April 2014, determined that 13.5% of life insurance proceeds were marital property and distributed 40% of that portion to defendant, directed 40% in-kind distribution of Flomsky LLC to defendant, declined to distribute a collateral account related to certain investments and apportioned 40% of the assets and liabilities related to those investments to defendant and 60% to plaintiff, declined to distribute the value of an apartment in Guttenberg, New Jersey, a record collection, and golf memberships, awarded defendant $26,000 in monthly taxable maintenance for six years, imputed annual income to defendant of $50,000, and included her future maintenance payments as additional income, for the purposes of calculating child support up to the then-statutory cap of $141,000, and directed defendant to sell a work of art, "John's Flag," through a private dealer for no less than the appraised value, unanimously modified, on the law and the facts, to strike the amount of basic child support in the third decretal paragraph and replace it with the sum of $4,250 per month retroactive to the date of entry of the judgment, to strike the allocation of the child's unreimbursed medical expenses in the fourth decretal paragraph and direct plaintiff to pay for 100% of these expenses, to strike the 40% allocation to defendant from the eighth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, nineteenth and twentieth decretal paragraphs and instead distribute the marital property set forth therein equally between the parties, and otherwise affirmed, without costs. The Clerk is directed to enter an amended judgment accordingly.
The court improvidently exercised its discretion in distributing the marital assets 60% to plaintiff and 40% to defendant. Although there is no requirement that each marital asset be divided evenly (see Arvantides v Arvantides, 64 NY2d 1033, 1034 [1985]), "where both spouses equally contribute to the marriage which is of long duration, a division should be made which is as equal as possible" (Smith v Smith, 162 AD2d 346, 347 [1st Dept 1990], lv denied 77 NY2d 805 [1991]). Here, although the referee found that defendant did not make direct contributions to the success of plaintiff's business, that was not the basis of his equitable distribution award and, in fact, the business was not distributed. Instead, the referee divided the marital property unequally solely because defendant was not employed outside the home and the parties hired domestic help, and thus, in the referee's view, she did not contribute equally to the marriage.
In our view, the referee's determination is not supported by the record. The parties were married for 18 years and had two children. Testimony adduced at trial established that defendant was actively involved with the children, coaching their athletic teams, attending parent-teacher conferences, and, as plaintiff testified, being "their mom." It is undisputed that the parties enjoyed a lavish lifestyle, and the evidence indicated that defendant played a major role in managing the home, including entertaining clients and paying household expenses from the [*2]parties' joint account. The referee's finding that there was no evidence that defendant "ever cooked a meal, dusted a table or mopped a floor" did not support the court's determination that she was therefore entitled to only 40% of the parties' marital assets (see generally Holterman v Holterman, 3 NY3d 1, 7-8 [2004])[FN1]. There was no basis to reduce equitable distribution merely because the parties chose to hire domestic help. Accordingly, we find that the marital property subject to distribution should be divided equally.
The court providently exercised its discretion in determining that only 13.5% of the proceeds of a life insurance policy on plaintiff's father was marital property subject to distribution based on the contribution of plaintiff's separate funds versus marital funds in paying the insurance premiums (see Popowich v Korman, 73 AD3d 515, 519-520 [1st Dept 2010]). However, in accordance with the equal distribution discussed above, defendant should receive $68,859, or 50% of the marital portion.
The court providently exercised its discretion in apportioning liability to defendant for failed investments in Florida made during the marriage that plaintiff personally guaranteed with a collateral account (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 421 [2009]). Contrary to defendant's contention, plaintiff's conduct in guaranteeing the loans did not absolve defendant of joint liability. Since the investments were made during the marriage for the benefit of the parties, the parties should share in the losses (see Capasso v Capasso, 129 AD2d 267, 293 [1st Dept 1987], appeal dismissed 70 NY2d 988 [1988]). Pursuant to the 50/50 division in equitable distribution, defendant should be apportioned 50% of the liability instead of 40%, and any excess in the account after total liability is determined shall be divided equally.
The court also providently exercised its discretion in ordering an in-kind distribution of plaintiff's interest in Flomsky LLC (Flomsky). Although defendant expressed concern during the trial about the volatility of this asset and ongoing capital calls, she did not waive her claim. In fact, she requested distribution of Flomsky in both her Statement of Proposed Disposition and posttrial brief. Plaintiff's contention that his interest in Flomsky could not be distributed because defendant failed to value the asset is unavailing in light of his proposal prior to trial to distribute Flomsky in lieu of maintenance. He also failed to explain how Flomsky differed from his other private investments, which were readily distributed without formal valuations. Pursuant to the 50/50 division in equitable distribution, defendant's in-kind distribution should be 50%.
Turning to the court's award of $26,000 in monthly taxable maintenance to defendant for six years, we find that the amount and duration were well within its discretion. The record supports that defendant was entitled to some maintenance based on the lavish lifestyle of the parties during the marriage, and the fact that she had not worked outside the home in over 20 years (see Kohl v Kohl, 24 AD3d 219, 220-221 [1st Dept 2005]). In light of her equitable distribution award, which we are now increasing, and the court's direction that plaintiff provide her with health insurance coverage until she qualifies for Medicare, we reject defendant's contention that she is entitled to at least 12 years, if not lifetime, maintenance. Thus, we find no basis to disturb the court's maintenance award.
However, the court made several errors in calculating the monthly basic child support award of $1,238.45 for the parties' unemancipated child. First, the referee had no basis to impute annual income to defendant of $50,000. While courts are afforded considerable discretion in imputing income, the calculation of a parent's earning potential " must have some basis in law and fact'" (Morille-Hinds v Hinds, 87 AD3d 526, 528 [2d Dept 2011]). Here, the court's determination that defendant could earn $50,000 finds no credible support in the record.
Defendant also correctly points out that the court erred in including future maintenance payments as income to her for the purpose of calculating child support under the law then in [*3]effect (see Simon v Simon, 55 AD3d 477, 477 [1st Dept 2008]; see also Lattuca v Lattuca, 129 AD3d 1683 [4th Dept 2015], lv dismissed 26 NY3d 1095 [2016], lv denied 28 NY3d 1099 [2016]). Reducing defendant's income to zero, plaintiff is 100% responsible for the child's add-on expenses, including any unreimbursed medical expenses.
Finally, the referee, in considering the statutory factors (see Domestic Relations Law § 240[1-b][f]), found plaintiff had significantly greater financial resources and a gross income that greatly exceeded defendant's, and that the child enjoyed a "luxurious standard of living" during the marriage. Nevertheless, the court determined that no deviation from the then-income cap of $141,000 was warranted because plaintiff had voluntarily agreed to pay the child's educational expenses, coaching, tutoring and summer camp. This was an improvident exercise of discretion. The record does not support a monthly basic child support award of $1,238.50, given the factors considered, but subsequently disregarded, by the referee. Under the circumstances here, we find that a $300,000 income cap, which would result in a monthly basic child support award of $4,250, retroactive to entry of the judgment of divorce, would satisfy the child's "actual needs" and afford him an "appropriate lifestyle" (see Matter of Culhane v Holt, 28 AD3d 251, 252 [1st Dept 2006]).
We have considered the parties' remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 7, 2019
CLERK



Footnotes

Footnote 1: The referee offered no other justification for the unequal equitable distribution award. Indeed, he explicitly stated that "had defendant been able to prove significant contributions as a homemaker and child-care provider, she would still have been entitled to the 50% of the marital assets that she claims."