Michael R. v Debra R. (2025 NY Slip Op 51215(U))

[*1]

Michael R. v Debra R.

2025 NY Slip Op 51215(U)

Decided on January 15, 2025

Supreme Court, Ulster County

Schreibman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 15, 2025
Supreme Court, Ulster County

Michael R., Plaintiff,

against
Debra R., Defendant.

Index No. EF2022-XXX

Redder, Bock & Associates, PLLC
Attorneys for Plaintiff
243 Wall Street, P.O. Box 3100
Kingston, New York 12402
By: Kathleen M. Bock, Esq.
J&G Law, LLP
Attorneys for Defendant
158 Orange Avenue, P.O. Box 367
Walden, New York 12586
By: Michele P. Ellerin, Esq.

Julian D. Schreibman, J.

This is a matrimonial case. Plaintiff Michael R. [Name Redacted] ("Husband") and defendant Debra R. [Name Redacted] ("Wife") have submitted a single equitable distribution issue for determination by the Court: whether future payments to the Husband of certain lottery winnings are marital or separate property.[FN1]
"Whether a particular asset is marital or separate property is a question of law." (Ceravalo v DeSantis, 125 AD3d 113, 115 [3rd Dept. 2015][internal quotation marks and citations omitted]).
Other issues in the divorce remain outstanding and counsel have expressed that a determination of this one is a necessary predicate to resolving other financial aspects of the case. Accordingly, the Wife has now moved for partial summary judgment declaring the lottery [*2]proceeds marital and the Husband has filed opposition. As explained further below, there is relatively little caselaw guiding the distribution of future lottery payouts in the context of a divorce and no binding precedent that matches the facts of this case.
The following facts are not disputed. In 2011, the Husband's father, Michael R. [Name Redacted] ("Michael Sr."),[FN2]
was a prize-winner on a scratch off lottery game called "Set for Life." The Set for Life game did not pay a lump sum prize but rather awarded regular life-time payouts, with a guaranteed minimum award of $5 million payable over 20 years. Under the rules established by the New York State Gaming Commission (the "Commission"), Michael Sr. was permitted to (i) divide his winnings among any number of family members; (ii) decide what percentage share each received, and, (iii) choose which of those family members would be the "life" during which winnings would be distributed. Once Michael Sr. chose family members to share in the winnings, the Commission did not distinguish among them, i.e., Michael Sr. would not have any greater status than any of the chosen family members.
Michael Sr. chose to formally share the lottery winnings with five family members: his wife Lucille [Name Redacted]; his two adult children, Michael, the Husband herein, and Lori; and his two grandchildren, L. [Name Redacted], the minor child in the present divorce and H. [Name Redacted], Lori's child.[FN3]
Neither Lori's husband, nor Debra R., the Wife herein, were designated. The Husband contends that the Wife was directly involved in advising Michael Sr. on how to divide the winnings, including the decision not to directly include her or Lori's husband.
Since that time, the Husband has received an annual share of the winnings which are treated as taxable income to him. After taxes, the net amount he receives is approximately $30,000, per year. During the marriage, the Husband never segregated these funds; rather, they were deposited directly into a joint bank account and used for marital expenses.
The Wife contends that the lottery winnings, including all future, lifetime payments to the Husband, are marital property subject to equitable distribution and takes the position that the payments should be divided equally between her and the Husband. She cites three cases in support of her position. Each is reviewed in turn.
In Ullah v Ullah, 161 AD2d 699 [2nd Dept. 1990], the husband, during the marriage, purchased a $1 lotto ticket which won an $8 million jackpot, payable in installments over 21 years. Significantly, although only a dollar, the funds used to purchase the ticket were necessarily marital. The court succinctly explained that the Domestic Relations Law "mandates [*3]that a lottery jackpot, including future payments, the right to which arose during the marriage by virtue of the efforts of one spouse, and upon a wager of marital funds, constitutes marital property subject to equitable distribution." (161 AD2d at 700). The court further upheld the equal division of the proceeds because the winnings were "predominantly the result of fortuitous circumstances and not the result of either spouse's toil or labor[.]" (Id.).
Smith v Smith, 162 AD2d 346 [1st Dept. 1990], involved similar facts. The husband, as part of a group purchase with co-workers, won a share of a $13.5 million jackpot payable in 21 annual installments. The money used by the husband to contribute to the ticket purchase was indisputably marital. Indeed, the parties did not dispute that the winnings were a marital asset and the appellate decision was addressed solely to the equitable division thereof, with the court replacing an 85/15 division by the trial court, with a 50/50 share.[FN4]

Neither Ullah nor Smith is dispositive here. In both of those cases, a spouse made the decision to play the lottery and used marital funds to do so. The investment of marital funds necessarily rendered any return on that gamble to be marital and neither spouse had any greater claim to the post-divorce distribution of winnings. Here, neither the Husband nor the Wife purchased the winning lottery ticket and no marital funds were expended. Therefore, the simple trigger for marital asset status present in Ullah and Smith is lacking and the issue of how the parties came to receive this stream of income becomes the critical question.
The third case relied upon by the Wife is more factually similar to the present case and has the added benefits of being more recent and from this Department. In Hughes v Hughes, 198 AD3d 1170 [3rd Dept. 2021], the wife's mother won a lottery jackpot and, just as in the present case, designated several adult children to be distributees of the winnings. There, as in the present case, the adult daughter-wife was considered by the Commission to be a "winner." Hughes would be binding on this Court, and dispositive in favor of the Wife, but for one critical difference: the entire winnings were paid to the couple as a lump sum during the marriage, several years before the divorce was filed. Here, there is no dispute that payments to the Husband during the marriage were marital income; he is not seeking any credits in relation thereto or to clawback any of those payments. The issue before the Court is solely to the future, post-divorce payments that the Husband expects to receive. On this issue, Hughes is unhelpful.
The fact that the award came with a guaranteed minimum payout over 20 years is simply not the same as an award paid in full during the marriage. Moreover, the Husband's share is by no means fixed. The death of any of the other recipients, including during the guaranteed paid period, will trigger a recalculation of the sums paid to the remaining beneficiaries. If the Husband dies, his share will go the others.
The Court has also considered the case of Rizzo v Rizzo, 120 AD3d 1400 [2nd Dept. 2014], for guidance. There, the divorcing parties disputed the status of future annuity payments [*4]generated by a personal injury settlement. The husband had been completely disabled in a work-related accident, but both the husband (for personal injuries) and the wife (for loss of consortium) were named plaintiffs in the subsequent civil action. The settlement agreement expressly provided that it was in full resolution of all the claims in the lawsuit, including the wife's, and made no allocation among the different causes of action. An annuity was put in place in connection with the settlement which was to generate monthly payments for a 30-year period; the annuity named both the husband and wife as joint payees with rights of survivorship. (Id. at 1402). The trial court held that the annuity payments were the separate property of the husband. The appellate division reversed.
Although it acknowledged that "a settlement award emanating from a personal injury action commenced by the parties is partially the separate property of each party named in such action," the Rizzo court found that the terms of the settlement (with both parties, undifferentiated), the structure of the annuity (payable to both with right of survivorship), and the conduct of the parties with respect to payments during the marriage (deposited into a joint account and spent on household expenses), all converted the settlement proceeds into marital property. (Id. at 1402-3). Given the underlying facts, however, the court allocated 90% of the settlement proceeds to the husband.
If the treatment of the pre-divorce distributions had been sufficient to convert the settlement to marital property, the Court would consider this persuasive authority in the present case. However, in the Court's reading, the determining factors in Rizzo were the terms of the settlement and annuity, with the treatment of the funds simply confirming the parties' intent.
In the present case, the Court believes the sequence of events is best understood as involving two transactions: the original sharing of the winning lottery ticket and the subsequent use of the annual distributions.
As to the first, sharing the lottery winnings was plainly a gift from Michael Sr. to the Husband. Michael Sr. had no obligation to share any of his lottery winnings with anyone. He alone had the authority to decide with whom, if anyone, to share the winnings and to decide how much each recipient's share would be. It is undisputed that Michael Sr. knew that he could expressly allocate an individual share to the spouses of his adult children, just as he did for his own spouse. He chose not to. This sequence of events evinces a clear donative intent specific to his biological children, including the Husband. The Husband's receipt of a share of the winnings did not depend on any act of his own or, as noted, any expense of marital funds. Rather, it is due purely to the beneficence of his father, Michael Sr. Under the DRL, a gift from a parent to one spouse alone is separate rather than marital property. (Strang v Strang, 222 AD2d 975, 976 [3rd Dept. 1995]). "[S]uch property cannot be considered to have been the product of the marital enterprise." (Brennan v Brennan, 103 AD2d 48, 52 [3rd Dept. 1984]).
The Wife focuses on the fact that the Husband did not pay a gift tax. While the tax status of an asset may have some probative value, the status of an asset under New York's Domestic Relations Law is not controlled by the peculiarities of federal tax law. Courts making separate/marital property determinations in New York routinely recognize valuable gifts from parents to adult children that do not trigger (or at least do not result in payment of) a federal gift tax. (See, e.g., Keil v Keil, 85 AD3d 1233, 1236 [3rd Dept 2011][farm deeded from parents to one spouse]; Zanger v Zanger, 1 AD3d 865, 866-67 [3rd Dept. 2003][real property gifted to husband by his parents during the marriage was separate property where there was no evidence gift was intended to both parties jointly]). Here, what the father gave his son was the right to receive [*5]future income.[FN5]
The fact that a tax is incurred when the income is paid rather than when the asset is shared does not alter the fact that Michael Sr. conveyed a thing of value exclusively to the Husband, and not to the Wife.
Having determined that the right to receive the lottery proceeds was a gift to the Husband when given, and therefore separate property, the remaining question is whether the Husband's practice, during the marriage, of depositing the winnings in a joint account and reporting them as income on the parties' joint tax return, transmutes the jackpot into a marital asset. As for the money actually deposited during the marriage, it certainly does. But as for future income, the Court holds that it does not. Comingling the proceeds in past years does not obligate the Husband to continue to do so forevermore.
This determination is consistent with the rule that the corpus of separate property may remain separate even if the proceeds or income therefrom are treated as marital. (See Palazolo v Palazolo, 200 AD3d 700 [3rd Dept. 2021][interest and dividends generated by separate property and used for marital purposes did not change the status of the separate property]; Miszko v Miszko, 163 AD3d 1204, 1206 [reporting rental income and expenses relating to wife's separate real property on parties' joint return did not alter separate property status]). As the Third Department explained in Giannuzzi v Kearney:
[T]he mere reporting of income earned from the separate asset of one spouse on a joint return does not transmute the separate property to marital property because both spouses are required to report all of their income, whatever the source, on a joint return. We agree that a contrary rule would force married persons to file separate income tax returns, and to pay higher income taxes, simply to protect the non-marital status of their separate property.
(160 AD3d 1079, 1081 [3rd Dept. 2018][internal quotation marks and citations omitted]. Here, as a result of being designated a co-owner of the winning lottery ticket, the Husband has a legal entitlement to a future stream of income. This right is essentially the "corpus" of the asset. The Husband has never shared this right with the Wife. He has not assigned any portion of the income stream to her, nor does she have any right of survivorship. Rather, he has only contributed his annual separate income to the annual marital income. (Chernoff v Chernoff, 31 AD3d 900, 903 [3rd Dept. 2006]["commingling the corpus with marital funds transmutes the separate property into marital property for purposes of equitable distribution, but commingling only a portion of the income produced by the corpus does not transmute the corpus which has never been commingled"][citations omitted]). By virtue of his prior contributions, the Husband is not obligated to continue doing so in perpetuity.
The Court has considered whether other legal principles which allow for the sharing of future income among former spouses should apply here. It is well-established, of course, that the right to future payouts of pensions and retirement accounts are subject to equitable distribution. [*6]This rule is grounded in the principle that those future earnings have been earned during the marriage (and to the extent they are not, they excluded from the distribution). Here, neither spousal income nor effort produced the lottery winnings; they are solely a gift from Michael Sr.
The division of future payouts of deferred or delayed compensation is similarly grounded. (See Blechman v Blechman, 234 AD2d 693, 695 [3rd Dept. 1996][future payments on contingency fees earned by lawyer on cases worked on during marriage were marital property]). In the same vein, a former spouse may claim an entitlement to share in future earnings such as royalties on artistic works created during the marriage, but again grounded in the economic partnership that presumes both spouses should be credited for things of value created during the marriage. (See, e.g., McGovern v. Getz, (193 AD2d 655 [2nd Dept. 1993]).
Instead, the Court sees the closest analogy as the receipt of annuity payments from an inheritance. Such payouts have consistently been recognized as separate property. (See, e.g., Cornish v Eraca-Cornish, 107 AD3d 1322, 1323 [3rd Dept. 2013][distributions on inheritance separate property]; Ann Marie T. v John T.; 12 Misc 3d 1174(A), 2006 WL 1789075 [Sup.Ct. Delaware Cty. June 16, 2006][inherited pension annuities separate property]). The status of such payments, the most analogous to those in this case, lends further support to the Court's analysis above.
Based on the foregoing, it is the Court's finding of fact and conclusion of law on the issue presented that the post-divorce distributions to the Husband of the lottery originally won by Michael Sr. are separate, not marital property, and are not subject to equitable distribution. The Court has considered any arguments as to defendant's motion for summary judgment regarding the instant equitable distribution issue which are not otherwise specifically addressed herein and finds them unavailing or unnecessary to reach. 
However, the Court notes the instant determination has two potential impacts on further decisions in this case. First, in the calculation of support the lottery income necessarily will be added to the Husband's income and not included at all in the Wife's. Second, to the extent any other equitable distribution issues are submitted to the Court, the Court may consider the Husband's receipt of these funds in the context of the equitable distribution of the marital estate.
Accordingly, the Court determines the branch of the defendant-wife's motion seeking summary judgment on the issue of the "Set for Life" lottery winnings as set forth above. The branches of the defendant-wife's motion seeking a modification of temporary maintenance and support, and for counsel fees, are addressed by separate Decision and Order issued by even date herewith.
This shall constitute the Decision and Order of the Court. The original Decision and Order is being filed with the Ulster County Clerk via NYSCEF. The signing of this Decision and Order shall not constitute entry or filing under CPLR §2220. Counsel is not relieved from the applicable provisions of that rule regarding notice of entry.
SO ORDERED.
Dated: January 15, 2025
Kingston, New York
ENTER,
JULIAN D. SCHREIBMAN, JSC

Footnotes

Footnote 1:Within the same motion practice, the Wife has sought an increase in pendente lite support and a determination regarding income calculations. These will be addressed by separate decision and order.

Footnote 2:Although both father and son are named Michael, it is not clear whether they are technically "senior" and "junior," as they are sometimes, but not always, referred to as such, and the caption does not identify the Husband as a junior. Nevertheless, for the sake of clarity, the father who purchased the winning lottery ticket is referred to in this Decision & Order as "Michael Sr.," and the adult child who is the litigant in this divorce is referred to as the "Husband."

Footnote 3:As L. was the youngest of the recipients, Michael Sr. designated his to be the lifetime used for the duration of the award. Michael Sr.'s grandchildren, however, were designated only to receive a small percentage of the payouts. The status of these payments to L., which have and will continue, is not at issue here as neither party disputes that those monies are L.'s property and are not part of the marital estate.

Footnote 4:Although not cited by the Wife, the Fourth Department reached the same conclusion in Campbell v Campbell, 213 AD2d 1027 [4th Dept. 1995]. There, the court found that an oral agreement among co-workers to share the proceeds, if any of their lottery tickets won, was enforceable against the wife's co-worker and therefore the wife's share of the co-worker's winnings was marital property. In so holding, the appellate division over-ruled the trial court which concluded that the co-worker was not legally bound to share the winnings and therefore anything the wife received was a gift and so separate property.

Footnote 5:While the Court believes it is sufficient to consider the gift as one of the right to future income, to the extent it is helpful to think of a tangible asset, then the lottery ticket itself suffices. The ticket was essentially a bearer bond entitling the holder to claim the winnings. The winning ticket was owned solely by Michael Sr. and he gifted part ownership in the winning ticket to the Husband.